IN THE MATTER OF MRS. DELORA DENNIS, ROUTE 2, BOX 478, BREVARD, NORTH CAROLINA 28712, AND OTHER CUSTOMERS OF HAYWOOD ELECTRIC MEMBERSHIP CORPORATION, COMPLAINANTS v. DUKE POWER COMPANY AND HAYWOOD ELECTRIC MEMBERSHIP CORPORATION, RESPONDENTS AND MR. THOMAS W. McGOHEY AND OTHER CUSTOMERS OF HAYWOOD ELECTRIC MEMBERSHIP CORPORATION, 505 CONNESTEE TRAIL, BREVARD, NORTH CAROLINA 28712, COMPLAINANTS v. DUKE POWER COMPANY AND HAYWOOD ELECTRIC MEMBERSHIP CORPORATION, RESPONDENTS AND MRS. CARMELETTA MOSES, ROUTE 68, BOX 326, TUCKASEGEE, NORTH CAROLINA 28783, COMPLAINANT v. DUKE POWER COMPANY AND HAYWOOD ELECTRIC MEMBERSHIP CORPORATION, RESPONDENTS AND MR. FORREST COLE, ROUTE 63, BULL PEN ROAD, CASHIERS, NORTH CAROLINA 28717, AND OTHER CUSTOMERS OF HAYWOOD ELECTRIC MEMBERSHIP CORPORATION, COMPLAINANTS v. NANTAHALA POWER & LIGHT COMPANY AND HAYWOOD ELECTRIC MEMBERSHIP CORPORATION, RESPONDENTS

No. 246PA94

(Filed 28 July 1995)

**1. Energy § 3 (NCI4th)— electric service transferred for industrial customers—transfer not punitive**

The Utilities Commission did not err in ordering the transfer of electric service to industrial plants from Haywood Electric

IN RE DENNIS v. DUKE POWER CO.

[341 N.C. 91 (1995)]

Membership Corporation to Duke Power where the Commission concluded, based on substantial evidence in view of the whole record, that the service provided by Haywood was inadequate and undependable. Furthermore, the Commission's reasons for transferring service were not primarily punitive where the transfer would provide relief for the entire area serviced by Haywood; the transfer to Duke could be effectuated easily because of the proximity of the industrial plants to Duke's service lines; improved electric service to the plants would benefit their numerous employees and customers; and, though the Commission recognized that the most severe remedy would be the transfer of the entire area to another supplier, it fashioned a remedy which would relieve the load placed on Haywood while it worked to improve its service to the other complaining consumers. N.C.G.S. § 62-110.2(d)(2).

**Am Jur 2d, Electricity, Gas, and Steam § 14.**

**Special requirements of consumer as giving rise to implied contract by public utility to furnish particular amount of electricity, gas, or water. 13 ALR2d 1233.**

**Liability of electric power or light company to patron for interruption, failure, or inadequacy of power. 4 ALR3d 594.**

**Liability of electric utility to nonpatron for interruption or failure of power. 54 ALR4th 667.**

2. **Energy § 3 (NCI4th)— electric service transferred for industrial but not residential customers—no error**

The Utilities Commission properly exercised its authority by transferring only an industrial user and respondent's largest customer rather than all complainants to Duke Power, since N.C.G.S. § 62-110.2(d)(2) allows the Commission discretion in determining its remedy, and the Commission's action was not arbitrary or capricious.

**Am Jur 2d, Electricity, Gas, and Steam §§ 10-12.**

3. **Constitutional Law § 89 (NCI4th); Energy § 2 (NCI4th)— industrial user treated differently from residential users— no denial of equal protection**

The order of the Utilities Commission transferring electric service to industrial plants from Haywood Electric Membership

**IN RE DENNIS v. DUKE POWER CO.**

[341 N.C. 91 (1995)]

Corporation to Duke Power without transferring service to all other customers did not violate the other customers' right to equal protection of the law, since, by transferring the industrial user, the Commission hoped to "relieve the load on the troubled . . . substation" and to allow Haywood "a reasonable amount of time to implement the proposed changes," and the order was therefore rationally related to the objective of restoring acceptable electric service to all complainants.

**Am Jur 2d, Electricity, Gas, and Steam § 38.**

**4. Energy § 3 (NCI4th)— transfer of consumer from one supplier to another—economic impact—testimony properly excluded**

The Utilities Commission properly excluded testimony by a witness regarding the adverse economic impact of a transfer of consumers from Haywood Electric Membership Corporation to other electric suppliers, since the economic impact of a transfer on an electric supplier is not delineated in N.C.G.S. § 62-110.2(d)(2) as a ground for consideration in determining whether a transfer to another electric supplier is authorized; it is obvious that rarely, if ever, would an electric supplier benefit economically from the loss of a customer; and such factor is therefore irrelevant to the Commission's determination of a remedy.

**Am Jur 2d, Electricity, Gas, and Steam § 29.**

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) and N.C. R. App. P. 21(a)(2) to review a unanimous decision of the Court of Appeals, 114 N.C. App. 272, 442 S.E.2d 104 (1994), affirming in part and reversing in part an order entered 5 October 1992 by the North Carolina Utilities Commission. Heard in the Supreme Court 13 April 1995.

*Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin, P.A., by Sam J. Ervin, IV, for petitioner-appellant M-B Industries, Inc.*

*Jerry W. Amos for respondent-appellee Haywood Electric Membership Corporation.*

*Duke Power Company, by Steve C. Griffith, Jr., Vice Chairman and General Counsel, and William Larry Porter, Deputy General Counsel; and Kennedy Covington Lobdell & Hickman, L.L.P., by Myles E. Standish, for respondent-appellant Duke Power Company.*

*Hunton & Williams, by Edward S. Finley, Jr., and James L. Hunt for respondent-appellant Nantahala Power and Light Company.*

*Robert P. Gruber, Executive Director, Public Staff, and Antoinette R. Wike, Chief Counsel, by A.W. Turner, Jr., and Victoria O. Hauser, Staff Attorneys, for intervenor-appellant Public Staff.*

*North Carolina Electric Membership Corporation, by Thomas K. Austin, Associate General Counsel, for intervenor-appellee North Carolina Electric Membership Corporation.*

WHICHARD, Justice.

This case arose from four complaints filed in the North Carolina Utilities Commission ("the Commission") on behalf of over nine hundred electric power consumers who were customers of respondent Haywood Electric Membership Corporation ("Haywood") in Haywood's Transylvania and Jackson County service areas. These consumers sought a transfer of their electrical service from Haywood to respondent Duke Power Company ("Duke Power") or respondent Nantahala Power and Light Company ("Nantahala").

On 30 July 1990 Delora Dennis and approximately 640 other customers of Haywood filed a complaint against Haywood alleging that they had received inadequate and undependable electric service from Haywood. They requested reassignment to Duke Power.

On 12 September 1990 Thomas W. McGohey and approximately 229 other customers of Haywood filed a complaint against Haywood alleging inadequate service. They requested reassignment to Duke Power.

In January 1991 Carmeletta Moses filed a complaint against Haywood alleging inadequate service. Though this complaint does not appear in the record, the Commission's order directing that it be served does. She requested reassignment to Duke Power.

On 20 February 1991 Forrest Cole and approximately sixty other customers of Haywood filed a complaint against Haywood alleging inadequate or inefficient service. They requested reassignment to Nantahala.

The Public Staff intervened on behalf of the complainants. *See* N.C.G.S. § 62-15(b), (g) (Supp. 1994). The North Carolina Electric

**IN RE DENNIS v. DUKE POWER CO.**

[341 N.C. 91 (1995)]

Membership Corporation ("NCEMC") also intervened. NCEMC is a generation and transmission cooperative that supplies wholesale bulk power for its twenty-seven member cooperatives, including Haywood. Carolina Power & Light intervened as an interested party.

On 18 April 1991 the Public Staff filed additional letters of complaint from Haywood's customers, including petitioner M-B Industries, Inc. ("M-B Industries"), a small manufacturing company in Rosman, North Carolina, with a work force of approximately two hundred people. Ed Morrow, president of M-B Industries, wrote its letter.

On 17 May 1991 the Commission, after a prehearing conference, filed a prehearing order that excluded the testimony of Gregory L. Booth, a witness for NCEMC, regarding the adverse economic impact on Haywood of a shift of customers from Haywood to other electric suppliers.

The Commission held public hearings on 21-22 May 1991 in Brevard and on 7-8 August 1991 in Raleigh. At these hearings forty-seven consumer witnesses testified. In its order of 5 October 1992, the Commission summarized the testimony. The witnesses complained, *inter alia*, of frequent and prolonged service outages caused by inadequate precaution against lightning and storms and by inadequate and nonuniform line-clearing procedures. Other complaints were that Haywood had responded ineffectively and arbitrarily to consumer problem reports, that it possessed inappropriate knowledge of consumer growth and usage patterns, and that there was inadequate communication and coordination between Haywood and its consulting engineer. The witnesses further complained of inadequate voltage levels and inappropriate voltage fluctuations that damaged heating equipment, water pumps, major electric appliances, and other electric equipment. They also complained of arbitrariness in Haywood's deposit procedures, credit checks, disconnection procedures, equal payment plans, and late payment assessments.

Ed Morrow described incidents of poor service at M-B Industries' two industrial manufacturing plants served by Haywood. Morrow complained of frequent outages. He identified motor losses due to dips in voltage and computer module losses due to surges. Morrow testified that M-B Industries' plants were forced to close due to power outages.

The Commission characterized the testimony from Haywood's consumers as "an unprecedented number of complaints requesting reassignment." In its order the Commission found that Morrow had testified to the difficulties M-B Industries' plants had had with Haywood's service. It found that despite numerous complaints by M-B Industries, Haywood had made only one improvement in its service, which was not optimal. The same lines and transformers installed in 1960 were still being used for M-B Industries' plants. The Commission further made specific findings detailing the respects in which Haywood's service to the other complaining consumers failed to comply with expected standards. It rejected Haywood's evidence offered to show that the service was adequate.

Based on these findings, the Commission concluded that the electric service provided by Haywood to the complainants, which included M-B Industries and others, was inadequate and undependable and that Haywood's conditions of service and regulations, as applied to complainants and others, were arbitrary and unreasonably discriminatory. After reaching these conclusions, the Commission discussed possible remedies, the most severe of which would be "a transferral of the entire service area to another supplier." The Commission adopted a remedy, however, that would permit Haywood a two-year grace period within which to implement proposed service changes. The Commission stated, "[T]he new management of Haywood should be given a reasonable amount of time to implement the proposed changes in the troubled [corporation]."

The Commission made one exception to its remedy of deferring action for two years. It ordered Haywood to cease and desist from serving M-B Industries and ordered Duke Power to begin serving M-B Industries. The order states:

The Commission . . . concludes that the best candidate for a transferral of a portion of the Haywood service area to another supplier is the M-B Industries plants. One plant is fifty feet away from an alternative supplier (Duke), its sister plant in the same area is already served by that alternative supplier with a satisfactory level of service, and the third plant (Flame Spray) is some 200 yards from Duke's lines. No other single customer in the area affects as many employees, and people, as these plants. Transferral of the M-B Industries plants from Haywood to Duke would relieve the load on the troubled Quebec substation. Transferral of the plants would also make it clear to Haywood,

**IN RE DENNIS v. DUKE POWER CO.**

[341 N.C. 91 (1995)]

and particularly to the Board of Directors of Haywood, the seriousness with which the Commission views the service problems that have been occurring, and the Commission's determination to press for a resolution of the service problems throughout the Haywood service areas. The plants are apparently the only industrial plants in Transylvania County served by Haywood. It [M-B Industries] pays Haywood approximately $4,000 per month for the electric service.

The Court of Appeals reversed the Commission's order requiring Haywood to cease and desist from serving M-B Industries. It reasoned:

[I]t is apparent . . . that the punitive effect on Haywood EMC of the transfer of its . . . largest commercial ratepayer was a major determinative factor in the Commission's decision to reassign M-B Industries and served as a ground for the Commission's decision to reassign M-B Industries while leaving the similarly affected residential consumers assigned to Haywood.

*In re Dennis v. Duke Power Co.*, 114 N.C. App. 272, 287, 442 S.E.2d 104, 113 (1994). The Court of Appeals held this basis for the Commission's order unlawful because it could not find a legislative directive in N.C.G.S. § 62-110.2(d)(2) or elsewhere that would authorize the Commission to order a reassignment of a highly valuable customer based on the Commission's intent to punish Haywood and to convey to Haywood's management that the Commission viewed the situation before it as a serious one. *Id.* at 287-88, 442 S.E.2d at 113.

The Court of Appeals further held that the nontransfer of the residential complainants was within the Commission's discretion. Based on the whole record, the Court of Appeals concluded that there was sufficient evidence to sustain the nontransfer of these complainants. *Id.* at 289, 442 S.E.2d at 114. It declined to address the Public Staff's constitutional argument on this issue, which invoked the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution, because it held that the Commission erred in transferring M-B Industries to Duke Power. *Id.* at 289-90, 442 S.E.2d at 114.

The Court of Appeals also held that the Commission erred by excluding Gregory L. Booth's proffered testimony regarding the economic impact of a transfer on Haywood. *Id.* at 295-96, 442 S.E.2d at 118.

**IN RE DENNIS v. DUKE POWER CO.**

[341 N.C. 91 (1995)]

On 28 July 1994 this Court allowed M-B Industries' petition for writ of certiorari. On 5 October 1994 we allowed Duke Power, Nantahala, and the Public Staff's joint petition for writ of certiorari.

M-B Industries, Duke Power, Nantahala, and the Public Staff argue that the Commission properly transferred electric service from Haywood to Duke Power. We agree, and accordingly we reverse the Court of Appeals on this issue. Nantahala argues that this Court now must address the constitutional argument deemed moot by the Court of Appeals as to whether the Commission erred in refusing to transfer the residential complainants from Haywood. We agree with Nantahala that because we are reversing the Court of Appeals, this issue is no longer moot, and we choose to address it. We agree with the Court of Appeals that the Commission did not err in transferring only M-B Industries, rather than all complainants, to Duke Power. We further hold that the nontransfer of the residential consumers does not violate either the Fourteenth Amendment to the United States Constitution or Article I, Section 19 of the North Carolina Constitution. M-B Industries, Duke Power, Nantahala, and the Public Staff also argue that the Commission properly excluded proffered testimony regarding the economic impact of the transfer on Haywood. We agree, and accordingly we reverse the Court of Appeals on this issue.

[1] The first issue is whether the Commission erred in ordering the transfer of the electric service to M-B Industries' plants from Haywood to Duke Power. The standard of review for decisions of the Commission is as follows:

> The court may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional provisions, or
>
> (2) In excess of statutory authority or jurisdiction of the Commission, or
>
> (3) Made upon unlawful proceedings, or
>
> (4) Affected by other errors of law, or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted, or

(6) Arbitrary or capricious.

N.C.G.S. § 62-94(b) (1989). The appellate court must "review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error." N.C.G.S. § 62-94(c). We have interpreted this statute to mean that the court must "assess whether the Commission's order is affected by errors of law, and . . . determine whether there is substantial evidence, in view of the entire record, to support the position adopted." *State ex rel. Utilities Commission v. Thornburg*, 325 N.C. 463, 472, 385 S.E.2d 451, 456 (1989).

The statute governing the Commission's power to transfer electric service from one supplier to another provides:

The Commission shall have the authority and jurisdiction, after notice to all affected electric suppliers and after hearing, if a hearing is requested by any affected electric supplier or any other interested party, to order any electric supplier which may reasonably do so to furnish electric service to any consumer who desires service from such electric supplier at any premises being served by another electric supplier, or at premises which another electric supplier has the right to serve pursuant to other provisions of this section, and to order such other electric supplier to cease and desist from furnishing electric service to such premises, upon finding that service to such consumer by the electric supplier which is then furnishing service, or which has the right to furnish service, to such premises, is or will be inadequate or undependable, or that the rates, conditions of service or service regulations, applied to such consumer, are unreasonably discriminatory.

N.C.G.S. § 62-110.2(d)(2) (Supp. 1994). Under this statute the Commission, upon finding that the service of an electric supplier is inadequate or undependable or unreasonably discriminatory, may order the transfer of electric service to another supplier.

Here, as the Court of Appeals correctly noted, the record shows that "the poor quality of electric service arising from the 'troubled Quebec substation' affected the area's individual residential consumers as well as the facilities at M-B Industries." *Dennis*, 114 N.C. App. at 287, 442 S.E.2d at 113. The Commission specifically stated

**IN RE DENNIS v. DUKE POWER CO.**

[341 N.C. 91 (1995)]

that Morrow had testified to the difficulties that M-B Industries, a complainant, had experienced. It concluded as a matter of law that "the electric service provided by Haywood EMC to the complainants and to the public witnesses in this proceeding is inadequate and undependable." The statute therefore allows the Commission to order the transfer of electric service of M-B Industries from Haywood to Duke Power.

It is clear from the order that it was not the Commission's sole intention to punish Haywood or to make clear to Haywood that it viewed the problems as serious ones. Viewed as a whole, the order stated several other reasons for making the transfer. The order does not evince a punitive intent; rather, the fashioning of the remedy was based on sound reasoning, aimed at producing better electric service for all complainants. The Commission stated that the transfer would provide relief for the entire area serviced by Haywood. The transfer to Duke Power could be effectuated easily because of the proximity of M-B Industries' plants to Duke Power's service lines. Further, the Commission noted that improved electric service to M-B Industries would benefit its numerous employees and customers. Finally, though the Commission recognized that the most severe remedy would be the transfer of the entire area to another supplier, it fashioned a remedy that would "relieve the load" placed on Haywood while it worked to improve its service to the other complaining consumers. That the Commission commented on the size of M-B Industries as a customer of Haywood and on the incidental implication of impressing Haywood with the seriousness with which it viewed the problems does not render the order invalid under the statute. Because the Commission concluded—based on substantial evidence in view of the whole record—that the electric service provided by Haywood to M-B Industries was inadequate and undependable, it could order the transfer under the statute, and its reasons for doing so were not primarily punitive. Accordingly, we reverse the Court of Appeals on this issue and remand the case for reinstatement of the Commission's order.

[2] The next issue is whether the Commission properly exercised its authority by transferring only M-B Industries, rather than all complainants, to Duke Power. The Court of Appeals held that N.C.G.S. § 62-110.2(d)(2) allows the Commission discretion in determining its remedy. We agree.

**IN RE DENNIS v. DUKE POWER CO.**

[341 N.C. 91 (1995)]

N.C.G.S. § 62-110.2(d)(2) grants the Commission "the authority and jurisdiction" to transfer electric service from one supplier to another upon finding either that the service to the complaining consumer is "inadequate or undependable" or that "the rates, conditions of service or service regulations, applied to such consumer, are unreasonably discriminatory." The statute does not mandate the transfer; rather, it gives the Commission the authority and jurisdiction to make the transfer after certain determinations. The language of the statute allows the Commission discretion in fashioning a remedy; therefore, we hold that the Commission may transfer only M-B Industries, rather than all complainants, as long as its action is not capricious or arbitrary. N.C.G.S. § 62-94(b)(6); *see Utilities Commission v. Coach Co.*, 261 N.C 384, 391, 134 S.E.2d 689, 695 (1964). As discussed above, one of the Commission's reasons for transferring only M-B Industries was that such a remedy would reduce Haywood's service demands, thereby facilitating its effort to improve its service to the other complainants. In addition, the Commission ordered Haywood to improve its facilities and its customer services and to file progress reports with the Commission detailing its efforts. There was nothing arbitrary or capricious in the Commission's action. We therefore affirm the Court of Appeals insofar as it affirmed the Commission's order in this regard.

[3] The Public Staff also argued to the Court of Appeals that the Commission's order violated the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution. The Court of Appeals considered this issue moot in light of its holding that the Commission erred in transferring M-B Industries. Because we are reversing that holding of the Court of Appeals, we will address the issue.

The Public Staff argues that the Commission's order unreasonably discriminates against the other complainants whose electric service was found to be inadequate, undependable, or unreasonably discriminatory by failing to order a transfer of their electric service to another electric supplier. It contends that the record does not support a rational basis for treating them differently from M-B Industries. We disagree.

We assume, without deciding, that the order creates a classification, subject to equal protection scrutiny. The objective of the Commission's order was to restore acceptable electric service to all complainants. By transferring only M-B Industries, the Commission

**IN RE DENNIS v. DUKE POWER CO.**

[341 N.C. 91 (1995)]

hoped to "relieve the load on the troubled Quebec substation" and to allow Haywood "a reasonable amount of time to implement the proposed changes." We conclude that the order was rationally related to the objective of restoring acceptable electric service to all complainants. *See Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 457-58, 101 L. Ed. 2d 399, 409 (1988) ("Unless a statute provokes 'strict judicial scrutiny' because it interferes with a 'fundamental right' or discriminates against a 'suspect class,' it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate governmental purpose."); *State ex rel. Utilities Comm. v. Carolina Utility Cust. Assn.*, 336 N.C. 657, 680-81, 446 S.E.2d 332, 346 (1994) (noting that the North Carolina cases applying the state and federal Constitutions' Equal Protection Clauses use the same test as the federal courts). The order therefore does not violate the other complainants' right to equal protection of the law.

**[4]** The next issue is whether the Commission erred by excluding the testimony of Gregory L. Booth regarding the adverse economic impact of a transfer of consumers from Haywood to other electric suppliers. M-B Industries, Duke Power, Nantahala, and the Public Staff argue that this issue is not properly preserved for appellate review because NCEMC, which offered the testimony, made no offer of proof. *See* N.C.G.S. § 1A-1, Rule 43(c) (1990) ("In an action tried before a jury, if an objection to a question propounded to a witness is sustained by the court, the court on request of the examining attorney shall order a record made of the answer the witness would have given."); *see also* N.C. R. App. P. 10(b)(1) (providing procedure for preserving questions for appellate review). We disagree.

This Court has held that a party must preserve the exclusion of evidence for appellate review by making a specific offer of proof unless the significance of the evidence is ascertainable from the record. *Currence v. Hardin*, 296 N.C. 95, 100, 249 S.E.2d 387, 390 (1978). Further, "the essential content or substance of the witness' testimony must be shown before [this Court] can ascertain whether prejudicial error occurred." *State v. Simpson*, 314 N.C 359, 370, 334 S.E.2d 53, 60 (1985); *see also Nelson v. Patrick*, 73 N.C. App. 1, 7, 326 S.E.2d 45, 49 (1985) (failure to make offer of proof prevents determination of prejudice). Here, in prefiled proffered testimony, Booth stated that he would "evaluate the financial impact which will be imposed on Haywood EMC and its remaining customers if any or all of the service area is transferred to another utility." He stated that he

**IN RE DENNIS v. DUKE POWER CO.**

[341 N.C. 91 (1995)]

would testify to his conclusion that "[t]here will be significant and irreparable harm imposed on Haywood EMC and its member/consumers and on NCEMC and its other members if any or all of the service area is transferred to another power supplier." This description of the excluded testimony is sufficiently specific for this Court to determine whether it was properly excluded and if not, whether its exclusion was prejudicial. *See State v. Bryant*, 337 N.C. 298, 310, 446 S.E.2d 71, 77 (1994) (no offer of proof, but evidence ascertainable from transcript; therefore, alleged error preserved for appellate review). We therefore consider this question properly preserved for review.

We note that Haywood on this appeal raises for the first time a constitutional argument on this issue. It contends that a state law, such as N.C.G.S. § 62-110.2, that allows the taking of an electric cooperative's consumers without consideration of the economic impact on the federally funded cooperative violates the Supremacy Clause of the United States Constitution. This constitutional issue is not preserved for appellate review because it was not raised in and addressed by the Commission, nor was it argued to the Court of Appeals. "It is a well established rule of this Court that it will not decide a constitutional question which was not raised or considered in the court below." *Johnson v. Highway Commission*, 259 N.C. 371, 373, 130 S.E.2d 544, 546 (1963). We therefore will not address this argument.

The Court of Appeals held that exclusion of this proffered testimony was error based on public policy grounds and the liberal admissibility standards for evidence in the Commission's proceedings. *Dennis*, 114 N.C. App. at 296, 442 S.E.2d at 118. M-B Industries, Duke Power, Nantahala, and the Public Staff argue, and we agree, that evidence of the economic impact on Haywood of the transfer of a customer to another electric supplier is not relevant under N.C.G.S. § 62-110.2(d)(2). N.C.G.S. § 62-110.2(d)(2) provides as grounds for transfer either that the electric service to a consumer is or will be inadequate or undependable or that the rates, conditions of service, or service regulations are unreasonably discriminatory. The economic impact of a transfer on an electric supplier is not delineated as a ground for consideration in determining whether a transfer to another electric supplier is authorized. Further, it is obvious that rarely, if ever, would an electric supplier benefit economically from the loss of a customer. Such a factor therefore is irrelevant to the Commission's determination of a remedy. *See* N.C.G.S. § 62-65(a)

(1989) ("The Commission may exclude incompetent, irrelevant, immaterial and unduly repetitious or cumulative evidence."). We hold that the Commission properly excluded Booth's testimony.

Accordingly, we affirm the Court of Appeals' decision insofar as it affirmed the Commission's transfer of only M-B Industries, rather than all residential complainants, to Duke Power. We reverse that part of the Court of Appeals' decision that reversed the Commission's order transferring electric service of M-B Industries from Haywood to Duke Power and that reversed the Commission's ruling on the exclusion of the economic impact testimony. The case is remanded to the Court of Appeals with instructions to remand to the Utilities Commission for reinstatement of the Commission's order of 5 October 1992 transferring electric service to M-B Industries from Haywood to Duke Power.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.