DORIS E. HOLT v. LINDA J. WILLIAMSON, M.D., D/B/A ALBEMARLE PEDIATRICS

ROBERT B. HOLT v. LINDA J. WILLIAMSON, M.D., D/B/A ALBEMARLE PEDIATRICS

No. COA95-902

(Filed 18 February 1997)

1. **Negotiable Instruments and Other Commercial Paper § 23 (NCI4th); Evidence and Witnesses § 573 (NCI4th)— relationships with former girlfriends—relevance to show forgeries, breach of fiduciary duties**

In an action against a doctor by her purported common law husband and his mother to enforce promissory notes, testimony by three former girlfriends of the purported husband concerning the husband's use of a stamp of the doctor's signature, his improper payment of employees from the doctor's pediatric practice account, his use of an alias, the secrecy with which he conducted his business affairs, his treatment of the doctor as his wife, and his intimate relationships and discussions of marriage with each of the three girlfriends at the time he held himself out as the doctor's husband was relevant and admissible to support defendant doctor's defense that the promissory notes were forged and her counterclaims against the purported husband for conversion and breach of fiduciary duty.

**Am Jur 2d, Evidence §§ 380, 417, 441, 502.**

2. **Evidence and Witnesses § 3156 (NCI4th)— character for truthfulness—opinion testimony**

Opinion testimony by three former girlfriends of the male plaintiff regarding such plaintiff's lack of truthfulness was admissible under N.C.G.S. § 8C-1, Rule 608(a), as the veracity of any

witness may be attacked by opinion testimony as to the character of that witness for truthfulness.

**Am Jur 2d, Evidence §§ 705, 1437; Witnesses §§ 816, 1028.**

**3. Evidence and Witnesses § 2950 (NCI4th)— cross-examination—reward offer—crimes by defendant—bias of plaintiff**

Cross-examination of plaintiff regarding a "reward offer" seeking information about various crimes allegedly committed by defendant, which plaintiff mailed to defendant's acquaintances and caused to be published in newspapers and on the radio about the time plaintiff instituted this action against defendant for breach of contract and enforcement of promissory notes, was admissible to demonstrate that plaintiff's motivation in instituting suit against defendant derived in significant part from his bias against her and that his credibility as a witness was in question.

**Am Jur 2d, Evidence §§ 495, 1437; Witnesses §§ 816, 1039.**

**4. Evidence and Witnesses § 2950 (NCI4th)— cross-examination—letter drafted by defendant—admissibility to show bias**

Cross-examination of the male plaintiff regarding a letter drafted by him and signed by the female plaintiff and others indicating their desire to "get [defendant] put away" and warning the male plaintiff's former girlfriend that "the best way to avoid further involvement" was to assist in putting defendant away was admissible to demonstrate the male plaintiff's bias against defendant and thereby impeach his credibility as a witness.

**Am Jur 2d, Evidence §§ 495, 1437; Witnesses §§ 816, 1039.**

**5. Evidence and Witnesses § 575 (NCI4th)— attempted procurement of signature stamp—relevancy to show fraud and conversion**

Testimony by a stamp company's owner that his company received orders for a signature stamp bearing defendant doctor's name, shortly after defendant discovered a fraudulent scheme by her purported common law husband and retrieved her signature stamp from the purported husband's residence, was relevant to defendant's counterclaims against the purported husband for

**HOLT v. WILLIAMSON**

[125 N.C. App. 305 (1997)]

conversion and breach of fiduciary duty where sufficient circumstantial evidence existed to raise an inference that the purported husband was the party seeking to procure the signature stamp.

**Am Jur 2d, Conversion § 32; Fraud and Deceit § 429.**

6. **Appeal and Error § 147 (NCI4th)— objection on discovery grounds—relevancy issue not presented**

The appellate court will not consider plaintiffs' contention that certain testimony was irrelevant where plaintiffs' objection at trial was based on discovery matters and plaintiffs' counsel informed the trial court that no relevancy question existed. N.C. R. App. P. 10(b)(1).

**Am Jur 2d, Appellate Review § 614.**

7. **Negotiable Instruments and Other Commercial Paper § 30 (NCI4th)— promissory notes—business plan—lack of consideration**

A business school professor's testimony that a business plan created by defendant doctor's purported common law husband to outline his proposed services to defendant in setting up her practice was not a real business plan of any value was relevant to the issue of lack of consideration for consulting agreements and corresponding promissory notes which the purported husband sought to enforce.

**Am Jur 2d, Bills and Notes § 689; Contracts § 18.**

8. **Damages § 134 (NCI4th)— punitive damages—supporting evidence—award not excessive**

The jury's award of punitive damages on defendant doctor's counterclaim against her purported common law husband was supported by the evidence and the jury's verdict finding that a fiduciary relationship existed between the purported husband and defendant and that the purported husband had breached his fiduciary duty to defendant. Furthermore, the jury's award of $1,600,000 in punitive damages when it awarded compensatory damages of only $31,834 was not so excessive as to have been awarded under the influence of passion or prejudice, although the purported husband contends the award approximated the amount of the promissory notes sued upon by him and his mother, where the evidence showed an elaborate fraudulent scheme perpetrated by the purported husband against defendant.

**HOLT v. WILLIAMSON**

[125 N.C. App. 305 (1997)]

**Am Jur 2d, Damages §§ 754, 844, 906; Fraud and Deceit § 347.**

**Plaintiff's rights to punitive or multiple damages when cause of action renders both available. 2 ALR5th 449.**

**9. Conspiracy § 12 (NCI4th)— conspiracy to convert funds—sufficient evidence—JNOV improper**

The trial court erred by entering a JNOV in favor of the mother of defendant doctor's purported common law husband which relieved the mother from joint and several liability for compensatory damages awarded to defendant doctor where the record shows that the judgment against the mother was rendered upon defendant's counterclaim that she conspired to convert defendant's funds, not that she actually converted them; it was thus not necessary that she have control over the funds; an agreement between the mother and her son to convert defendant's funds unlawfully was shown by evidence that she discussed with her son the drawing of an employment contract with defendant which was found by the jury to be fraudulent, she signed or witnessed numerous fraudulent consulting agreements and promissory notes, and checks were written to her by her son from defendant's pediatric practice account; the jury rejected the mother's testimony that she personally saw defendant stamp her signature on the documents at issue; and there was direct evidence of overt acts by the son which furthered the agreement to convert defendant's funds.

**Am Jur 2d, Conspiracy §§ 15, 26, 40; Evidence § 848.**

Appeal by plaintiffs and defendant from judgment and order entered 12 December 1994 by Judge W. Douglas Albright in Guilford County Superior Court. Heard in the Court of Appeals 29 March 1996.

*Smith, Follin & James, L.L.P., by Norman B. Smith and Margaret Rowlett, for plaintiffs.*

*Morton, Grigg and Phillips, L.L.P., by Ernest H. Morton, Jr., David L. Grigg, and David L. Grigg, Jr., for defendant.*

JOHN, Judge.

Plaintiff Robert B. Holt (Holt) and his mother, plaintiff Doris E. Holt (Mrs. Holt), appeal judgment in favor of defendant entered upon jury verdict as well as the trial court's contemporaneous order allow-

## HOLT v. WILLIAMSON

[125 N.C. App. 305 (1997)]

ing in part and denying in part plaintiffs' motion for judgment notwithstanding the verdict (JNOV). Defendant Dr. Linda Williamson (Dr. Williamson) likewise appeals the partial grant of plaintiffs' JNOV motion. While rejecting plaintiffs' contentions, we find defendant's arguments persuasive and reverse the trial court's entry of JNOV in favor of Mrs. Holt.

Pertinent facts and procedural information are as follows: Holt and Dr. Williamson met in 1983 while the latter was a student at Bowman Gray School of Medicine, and the two began an intimate relationship. Following defendant's graduation and upon commencement of her residency at Cone Memorial Hospital in Greensboro, defendant moved into the house shared by Holt and his mother in that city (the Holt residence). Dr. Williamson testified that she and Holt discussed marriage many times during the next several years, but that Holt assured defendant they were already married under common law by virtue of living together. Dr. Williamson related that Holt gave her engagement and wedding rings, and Holt admitted the couple held themselves out as husband and wife. For example, they told Dr. Williamson's parents they were married, and Dr. Williamson introduced Mrs. Holt, with whom she had become very close, as her mother-in-law.

Upon completion of defendant's residency, she and Mrs. Holt moved to Albemarle, where defendant began a pediatrics practice, "Albemarle Pediatrics." Defendant testified that Holt told her he would also move to Stanly County upon sale of the Greensboro residence.

Dr. Williamson and Holt agreed the latter would manage all financial aspects of defendant's medical practice. He did so from an office located within the Holt residence in Greensboro at which he received and stored checks and accounting documents associated with Albemarle Pediatrics.

Holt had in his possession a signature stamp bearing Dr. Williamson's name and was also an authorized signatory on the bank account of Albemarle Pediatrics. From November 1988 until the end of 1992, Holt wrote numerous checks payable to himself, his business ventures, and Mrs. Holt, affixing Dr. Williamson's stamp to some and personally signing others.

In addition, Holt drafted agreements obligating Dr. Williamson to pay Mrs. Holt $90,000 per year for ten years for housekeeping and secretarial services, and to pay himself $150,000 per year for ten

years for consulting and management services. The agreement with Mrs. Holt was to be automatically renewable for ten-year periods; upon termination of the agreement, Mrs. Holt was to receive $90,000 for ten years, and thereafter $85,000 per year until she reached age 114. The contract with Holt was similarly renewable, and if terminated he was to receive $100,000 for five years, $75,000 for the next five years, and $52,000 annually thereafter until he reached age 80.

The agreement with Mrs. Holt mandated that any disputes arising out of the contract be settled by a panel of three arbitrators: Holt and one individual each appointed by Mrs. Holt and by Dr. Williamson. Holt's contract similarly provided for a panel of arbitrators to consist of his mother and one person each appointed by himself and Dr. Williamson respectively. Arbitration decisions were to be by majority vote with no appeal. The agreements also declared, *inter alia,* that Mrs. Holt would hold herself out as defendant's mother-in-law, and that Holt likewise would hold himself out as defendant's husband in all aspects, "except sexually on [Holt's] own discretion."

Although Dr. Williamson testified she never signed her name with a signature stamp, her stamped signature appeared on the foregoing contracts and twenty corresponding promissory notes totalling approximately $1,600,000.00. In addition, her stamped signature appeared on agreements obligating her to indemnify Mrs. Holt from tax liabilities and to guarantee any defaults of Holt up to $2,225,000.00 in two of his other business ventures. Further, Dr. Williamson testified she unknowingly personally signed a tax indemnity agreement between Holt and herself. Holt acknowledged drafting each of the above documents, and Mrs. Holt either signed as a party or attested as a witness all of the documents except one.

Ultimately, in January 1993, Dr. Williamson terminated the business and personal relationship between herself and the Holts after obtaining legal advice and retrieving her business records from the Holt residence.

On 30 July 1993 and 4 August 1993, respectively, Mrs. Holt and Holt initiated the instant actions against defendant, seeking damages resulting from the alleged breach of the contracts described above and enforcement of the corresponding promissory notes. Defendant answered 14 October 1993, alleging the contracts and promissory notes to be "fictitious and false." She counterclaimed against Holt, seeking compensatory and punitive damages resulting from

**HOLT v. WILLIAMSON**

[125 N.C. App. 305 (1997)]

mismanagement of Albemarle Pediatrics and improper dispersal of its funds, breach of fiduciary duty, and conspiracy with Mrs. Holt to misappropriate funds and fabricate the contracts and promissory notes. Dr. Williamson also counterclaimed against Mrs. Holt for compensatory and punitive damages arising out of the alleged conspiracy with Holt.

The actions were consolidated pursuant to defendant's motion, and plaintiffs voluntarily dismissed their breach of contract claims prior to trial. On 10 November 1994, the jury returned a verdict finding that none of Dr. Williamson's purported signatures on the promissory notes were genuine, thereby rejecting plaintiffs' claims based upon the notes. The jury also determined plaintiffs had conspired to convert Dr. Williamson's funds, that Holt had converted said funds in breach of a fiduciary duty, and that his "breach of fiduciary duty and/or conversion [had been] accompanied by outrageous or aggravated conduct," thereby entitling Dr. Williamson to $31,834.00 compensatory and $1,600,000.00 punitive damages. On 12 December 1994, the trial court entered judgment consistent with the verdict, holding Holt and his mother jointly and severally responsible for payment of compensatory damages and Holt solely liable for the punitive award. However, on that same day the court granted Mrs. Holt's motion for judgment notwithstanding the verdict "as to defendant's counterclaim for civil conspiracy and conversion against her."

Plaintiffs attack the trial court's judgment primarily on grounds the court erroneously admitted certain evidence and let stand the award of punitive damages, while defendant contends the trial court erroneously granted Mrs. Holt's motion for judgment notwithstanding the verdict.

I.

Plaintiffs claim the trial court's permitting into evidence of two documents and the testimony of seven different witnesses constituted sufficient grounds for allowance of their motion for mistrial, and now entitles them to a new trial, because such evidence was irrelevant or, alternatively, had a prejudicial effect that outweighed its probative value. We disagree.

"Relevant evidence," as defined by N.C.R. Evid. 401 (Rule 401), is

evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

*See In re Dennis v. Duke Power Co.*, 114 N.C. App. 272, 295, 442 S.E.2d 104, 117 (1994), *aff'd in part and rev'd in part*, 341 N.C. 91, 459 S.E.2d 707 (1995) ("evidence is relevant if it has any logical tendency, *however slight*, to prove a fact in issue in the case" (citation omitted)). The trial court's ruling on whether proffered evidence is relevant is not discretionary; however, it is to be given "great deference" on appeal. *Hales v. Thompson*, 111 N.C. App. 350, 357, 432 S.E.2d 388, 393 (1993).

Evidence deemed relevant is admissible unless specifically prohibited either constitutionally or statutorily, N.C.R. Evid. 402, but may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice . . . ." N.C.R. Evid. 403 (Rule 403). The decision whether or not to exclude evidence under Rule 403 is within the sound discretion of the trial court, as is the determination of the necessity for a mistrial. *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986).

[1] Plaintiffs focus upon testimony by three of Holt's former girlfriends, Clarissa Ann Keller (Keller), Krystal Powers (Powers), and Joanna Lane (Lane). They contend that notwithstanding the trial court's *in limine* orders substantially limiting the testimony of these witnesses before the jury, the women were allowed to relate their personal relationships with Holt, thereby "sidetrack[ing]" the trial and producing the "unfair implication . . . that he mistreated defendant." We are persuaded otherwise.

Keller testified she had been involved with Holt from 1986 through 1990, and that they had discussed marriage. She knew Dr. Williamson resided at the Holt residence during a part of that time, but Holt would not allow Keller to visit when defendant was present. Keller reported an incident during which she attempted to spy on Holt out of jealousy, and saw him in his bedroom wearing a bathrobe and laying on his bed with Dr. Williamson. When Dr. Williamson moved to Albemarle, Keller came to the Holt residence more often, and Holt paid her for performing such tasks as cleaning the house and washing his automobiles. On one occasion she retrieved mail from the mailbox and discovered a piece of correspondence listing the addressee as "Doug West," the name under which, according to another witness, an individual had attempted to order a signature stamp in the name of Dr. Williamson.

Powers related that she dated Holt for one year beginning in March 1992. She lived in the Holt residence with him from the begin-

ning of their relationship until November 1992, eventually moving out because she "got tired of his lies, and [his] locking me out of the house, and mistreating me, and so, I decided to leave, and was afraid to leave." Powers further stated that Holt had several people working for him in the home-based office, with at least one doing various chores around the Holt residence, including feeding the horses and washing his automobiles. According to Powers, these individuals were paid by Holt out of the Albemarle Pediatrics account. Further, Holt kept the office locked and attempted to conceal its contents from Powers; nonetheless, she had seen him use a signature stamp bearing Dr. Williamson's name when he wrote checks out of the Albemarle Pediatrics account to pay the employees.

Finally, Lane testified she had been employed by Holt in 1991 to work for Med Tech, a subdivision of Albemarle Pediatrics. Over the three-week tenure of her employment she had been required to perform no "real" work and instead spent her time participating in recreational activities with Holt and caring for and riding his horses. She said other employees at the house ran personal errands for Holt, mowed the lawn, and washed dishes. Lane also related that she and Holt quickly became engaged, but that she broke off the relationship after he took her on a trip to Atlanta and "left [her] there."

In addition, the three women expressed their opinion as to Holt's character for truthfulness or untruthfulness, stating respectively: (1) "I think he is dishonest. I think he is a pathological liar. He cannot tell the truth;" (2) "He cannot distinguish between truth and a lie;" and (3) "[H]e is extremely dishonest."

Examination of the record reveals the testimony of the foregoing witnesses to be relevant to Dr. Williamson's defense that the promissory notes upon which plaintiffs sued were forged, and also to her counterclaims against Holt for conversion and breach of fiduciary duty. Particularly pertinent was evidence regarding Holt's use of the signature stamp, his improper payment of employees from the Albemarle Pediatrics account, his use of an alias, and the secrecy with which he conducted business affairs. Evidence Holt was laying on a bed with defendant in his bedroom while wearing a robe, and that Keller was not allowed at the Holt residence when Dr. Williamson was home, was relevant in that Holt denied he had ever acted in a husbandly manner towards defendant or that they had ever shared a bedroom in the Holt residence; his treatment of Dr. Williamson as his wife was germane to the existence of a fiduciary

duty between the two. Evidence Holt had intimate relationships and discussed marriage with each of the three witnesses during the period of 1986 to 1993, a time during which Holt held himself out to Dr. Williamson as her husband, was relevant to the scheme of deceit perpetrated by Holt against defendant. In addition, brief details concerning the relationship of each with Holt were properly admitted to establish a foundation as to their knowledge of Holt and their respective opportunities for observing and hearing the matters about which they testified.

The trial court limited with precision and particularity those details of Holt's relationships with the women which were allowed before the jury. While an isolated improper statement on the part of a witness, such as that of Powers concerning why she moved out of the Holt residence, may have escaped the court's careful scrutiny during the lengthy trial below, the testimony of each was proper nearly *in toto*. The record indicates that any fleeting irrelevant comment which may have come before the jury constituted mere harmless error and in no way prejudiced plaintiffs to the extent a new trial is required. *See* N.C.R. Civ. P. 61 (no error in admission of evidence is grounds for new trial unless refusal to grant one would amount to denial of a substantial right). Moreover, the trial court did not abuse its discretion under Rule 403 in determining the testimony of Holt's girlfriends not to be unduly prejudicial.

[2] In addition, the statements of the three women regarding Holt's lack of truthfulness was without question permissible under N.C.R. Evid. 608(a), as the veracity of any witness may be attacked by opinion testimony as to the character of that witness for truthfulness. While Keller's statement that Holt was a "pathological" liar arguably qualified as testimony only appropriate from an expert witness, *see* N.C.R. Evid. 701 & 702, it may equally be fairly characterized as simple hyperbole on the part of Keller. In any event, if admission of Keller's comment was indeed error, we conclude it likewise was harmless error. *See* N.C.R. Civ. P. 61.

[3] Plaintiffs further contend the trial court erred by permitting other allegedly irrelevant and unduly prejudicial evidence, including that of a "reward offer" drafted by Holt in 1993 at or about the time the instant action was initiated, and which purported to seek information about various crimes allegedly committed by defendant. Holt mailed this pronouncement to numerous acquaintances of defendant, including potential witnesses, and caused it to be published in newspapers and on the radio. The document stated, *inter alia*, that "depositions

are currently underway," and warned, "if you are about to be deposed, remember, perjury is a criminal act under RICO," and that "anyone with knowledge of racketeering activities can be brought into the suit and . . . can be arrested for all the crimes committed by the overall organization." The trial court allowed cross-examination of Holt regarding this "reward offer" for the purpose of demonstrating his bias against defendant.

"It is well-established that '[a] party to an action or proceeding, either civil or criminal, may elicit from an opposing witness on cross-examination particular facts having a logical tendency to show that the witness is biased against him or his cause . . . .' " *State ex. rel. Everett v. Hardy*, 65 N.C. App. 350, 352, 309 S.E.2d 280, 282 (1983) (citation omitted). Particularly in light of other testimony indicating Holt's bitterness against defendant for terminating their relationship, the challenged evidence was properly admitted as reflecting that Holt's motivation in instituting suit against defendant derived in significant part from his bias against her and that therefore his credibility on the witness stand was in question. His apparent attempt to intimidate potential witnesses was also admissible to impeach his credibility. *See* 81 Am. Jur. 2d *Witnesses* § 893 (1992); David B. Harrison, Annotation, *Admissibility and Effect, on Issue of Party's Credibility or Merits of his Case, of Evidence of Attempts to Intimidate or Influence Witness in Civil Action*, 4 A.L.R.4th 829 (1981).

[4] Plaintiffs also contest cross-examination of Holt regarding a December 1993 letter drafted by him, signed by Mrs. Holt and others, and sent to Keller, indicating their desire to "get [Dr. Williamson] put away" and warning Keller that "the best way to avoid further involvement is by assisting us in putting [her] away." As with the "reward offer," this cross-examination was admissible to demonstrate Holt's bias against Dr. Williamson and thereby impeach his credibility as a witness. Further, the court did not abuse its discretion in ruling that the probative value of the evidence was not outweighed by any prejudicial effect. *See* Rule 403.

[5] In addition, plaintiffs attack testimony by J. E. McCarter (McCarter), owner of Greensboro Rubber Stamp Company, that his business received orders for a signature stamp bearing Dr. Williamson's name in late January and early February 1993, shortly after defendant discovered Holt's scheme and retrieved her signature stamp from the Holt residence. Purchase of the first stamp was

sought in the name of "ABLE PEDIATRICS," using a false Greensboro address and telephone number. The second was ordered in the name of "Doug West." Testimony by Keller and Nanette Best linked use of the name Doug West to Holt and one of his employees, Dan Moore. Sufficient circumstantial evidence thus existed to raise an inference that Holt was the party seeking to procure the stamps, thereby supporting defendant's claim that Holt had been utilizing her signature stamp to defraud her. Plaintiffs' assertions notwithstanding, McCarter's testimony was relevant to defendants' counterclaims of conversion and breach of fiduciary duty.

[6] Plaintiffs also label as irrelevant testimony by First Union employee Cindy Compton [Compton] that Holt unsuccessfully attempted to withdraw money from defendant's IRA account in May of 1994. However, plaintiffs' objection at trial to this evidence was based solely on matters surrounding discovery; indeed, plaintiffs' counsel stated to the trial court regarding the challenged testimony that "[t]here's no relevancy question." We therefore do not address further plaintiffs' current assertion on appeal that Compton's testimony was irrelevant. *See* N.C.R. App. P. 10(b)(1) (to preserve question for appellate review, party must have presented timely motion to trial court, "stating the specific grounds for the ruling the party desired," if not apparent from the context).

[7] Finally, we reject plaintiffs' objection on relevancy grounds to testimony by business school professor Rollie Tillman that the "Tri-Party Partnership Business Plan" created by Holt to outline his proposed services to Dr. Williamson in setting up her practice was not a real business plan of any value. This evidence was relevant to the issue of lack of consideration for the consulting agreements and promissory notes.

In sum, plaintiffs' argument they were entitled to a mistrial and that a new trial is required based upon the introduction of irrelevant and prejudicial evidence is completely unfounded.

## II.

[8] Holt next argues the trial court erred by failing to grant his JNOV motion and motion to strike on the issue of punitive damages, contending such award violated his federal and state constitutional rights to due process and access to the judicial system, was not supported by sufficient evidence, and was so excessive and oppressive as to have been awarded under the influence of passion or prejudice.

## HOLT v. WILLIAMSON

[125 N.C. App. 305 (1997)]

We first observe that no constitutional arguments were presented at the trial level in support of Holt's motions regarding the punitive damages award. Accordingly, we will not consider such arguments on appeal. *See* N.C.R. App. P. 10(b)(1).

Regarding Holt's insistence that there was insufficient evidence to support an award of punitive damages, we disagree. Punitive damages are available for fraud, and fraud exists where there has been a breach of fiduciary duty. *Stone v. Martin*, 85 N.C. App. 410, 418, 355 S.E.2d 255, 259-60, *appeal dismissed and disc. review denied*, 320 N.C. 638, 360 S.E.2d 105 (1987). The jury by its verdict determined that a fiduciary relationship existed between Holt and Dr. Williamson, and that the former had breached his fiduciary duty to the latter. Suffice it to observe that *plenary* evidence, notably as recited above in the facts of this case, supported the jury's findings in this regard.

Finally, Holt's contention that the jury's award was so excessive as to have been awarded under the influence of passion or prejudice cannot be sustained. Holt complains that the award of $1,600,000 approximated the amount of the promissory notes sued upon by Holt and his mother. Holt's concern is directly addressed by the United States Supreme Court in *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 125 L. Ed. 2d 366 (1993), a case in which an award of $10 million dollars in punitive damages was upheld even though it accompanied a compensatory award of only $19,000. The Court, in a plurality opinion, stated a jury may appropriately

consider the magnitude of the *potential harm* that the defendant's conduct would have caused to its intended victim if the wrongful plan had succeeded, as well as the possible harm to other victims that might have resulted if similar future behavior were not deterred.

. . . .

While petitioner stresses the shocking disparity between the punitive award and the compensatory award, that shock dissipates when one considers the potential loss to respondents . . . had petitioner succeeded in its illicit scheme.

*Id.* at 460 & 462, 125 L. Ed. 2d at 381-82.

When the elaborate nature of the fraud perpetrated by Holt against Dr. Williamson, a woman who considered him her husband, is

contemplated in its entirety, the jury 's award cannot be said to have been in violation of the standards enunciated by the Supreme Court. We also note evidence was introduced at trial that Holt was possessed of substantial wealth. *See Arnold v. Sharpe*, 37 N.C. App. 506, 513, 246 S.E.2d 556, 561 (1978), *rev'd on other grounds*, 296 N.C. 533, 251 S.E.2d 452 (1979) (evidence of defendant's financial condition relevant in case involving punitive damages).

Consideration of plaintiffs' remaining arguments reveals them to be without merit, and we decline to discuss them further.

### III.

**[9]** Turning to defendant's appeal, we address her primary contention that the trial court erred by granting the JNOV motion of Mrs. Holt, thereby relieving her from joint and several liability as to the $31,834.00 compensatory award.

A motion for judgment notwithstanding the verdict should be "cautiously and sparingly granted," *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 369, 329 S.E.2d 333, 338 (1985), and only upon the trial court's determination that no more than a scintilla of evidence supports the essential elements of the non-movant claimant's case, when viewing the evidence in the light most favorable to the non-movant, *Clark v. Moore*, 65 N.C. App. 609, 610, 309 S.E.2d 579, 580-81 (1983).

In the case *sub judice*, the trial court granted Mrs. Holt's JNOV motion "as to defendant's counterclaim for civil conspiracy *and* conversion" (emphasis added). This ruling appears to have been based upon the court's perception, articulated when earlier considering motions for directed verdict, that "I don't find anything in here to suggest that Doris Holt had ever a smidgen of financial say-so or control about how that Albemarle Pediatrics' money was flowing." However, close examination of the pleadings and questions presented to the jury reveals judgment against Mrs. Holt was rendered upon defendant's counterclaim that Mrs. Holt *conspired* to convert defendant's funds as opposed to a claim of actual conversion.

Although there is no cause of action for civil conspiracy *per se*, an action exists for wrongful acts committed by persons pursuant to a conspiracy; such a claim requires showing of an agreement between two or more persons to do an unlawful act which results in damages to the claimant. *Dickens v. Puryear*, 302 N.C. 437, 456, 276 S.E.2d

325, 337 (1981); *Henderson v. LeBauer*, 101 N.C. App. 255, 260, 399 S.E.2d 142, 145, *disc. review denied*, 328 N.C. 731, 404 S.E.2d 868 (1991). Because the action is for damages caused by acts pursuant to the agreement, rather than for the agreement itself, the claimant must present evidence of an "overt act" committed by at least one conspirator in furtherance of the "common objective." *Dickens*, 302 N.C. at 456, 276 S.E.2d at 337. Although an action for civil conspiracy may be established by circumstantial evidence, sufficient evidence of the agreement must exist "to create more than a suspicion or conjecture in order to justify submission of the issue to a jury." *Id.*

A thorough review of the record, considered in the light most favorable to Dr. Williamson, reflects circumstantial evidence sufficient to raise more than a "suspicion or conjecture" that an agreement existed between the two plaintiffs to convert defendant's funds unlawfully, as well as direct evidence of overt acts by Holt which furthered that agreement, thereby causing damage to defendant. In particular, we find compelling the testimony of Mrs. Holt that she discussed with Holt the drawing of an employment contract with defendant, ultimately resulting in the totally one-sided contracts initially sued upon. In addition, Mrs. Holt signed or initialed as a witness numerous consulting agreements, promissory notes, and other contracts at issue in the instant litigation, and testified she personally saw defendant stamp her signature on these documents, although the jury specifically rejected this evidence in finding none of the purported signatures on the notes were genuine. Additional persuasive evidence of conspiracy was the existence of checks written to Mrs. Holt by her son from the Albemarle Pediatrics account. In conclusion, Mrs. Holt's unusual relationship with defendant over many years as her "mother-in-law," including residing with defendant in Albemarle while defendant's "husband" remained in Greensboro, coupled with Mrs. Holt's personal interest in, and actions regarding, the fraudulent contracts and promissory notes, constituted more than a scintilla of circumstantial evidence, *see Clark*, 65 N.C. App. at 610, 309 S.E.2d at 581, in support of the allegations of conspiracy against Mrs. Holt.

The suggestion of the able and experienced trial judge that Mrs. Holt appears to have been less culpable than her son in the scheme against Dr. Williamson is without doubt well taken. Nonetheless, we are compelled to reverse the order granting JNOV in favor of Mrs. Holt, and to remand for reinstatement of the judgment rendered on the verdict against her. As we have resolved this argument in favor of

Dr. Williamson, it is unnecessary to discuss her remaining assignments of error.

Affirmed in part; reversed and remanded in part.

Judges GREENE and MARTIN, Mark D. concur.