ADA PEARL STONE AND CECIL GLYNN JERNIGAN, INDIVIDUALLY AND AS SHAREHOLDERS OF CREEKSIDE ENTERPRISES, INC. v. R. L. MARTIN, JR., AND LARRY G. SANDERFORD AND CREEKSIDE ENTERPRISES, INC.

No. 8610SC973

(Filed 5 May 1987)

1. **Appeal and Error § 68— order compelling discovery—prior Court of Appeals opinion—law of the case**

　　A prior Court of Appeals opinion that an order compelling discovery did not violate defendant's constitutional rights against self-incrimination was the law of the case.

2. **Corporations § 13; Damages § 11.1— malfeasance in corporate management—punitive damages—evidence sufficient**

　　In an action for malfeasance in conducting the affairs of a corporation, the trial court did not err by denying defendants' motions for a directed verdict on the grounds that the evidence was insufficient to raise an issue of punitive damages where the jury found that defendants had wrongfully converted to their own use money belonging to the corporation, which was a breach of the fiduciary duty defendants owed the corporation and thus a fraud. Punitive damages are available for fraud and additional elements of aggravation are not necessary.

3. **Damages § 13— punitive damages—evidence of net worth admissible**

　　The trial court did not err by admitting evidence of defendants' net worth in an action for malfeasance in conducting the affairs of a corporation where the evidence sufficiently raised an issue of punitive damages.

4. **Damages § 11.1; Corporations § 13— malfeasance in managing corporation—punitive damages—not excessive**

　　In an action for malfeasance in conducting the affairs of a corporation, the jury did not abuse its discretion in awarding punitive damages, even though the award of punitive damages significantly exceeded the award of compensatory damages, because defendants were fiduciaries and the purpose of punitive damages is to punish.

5. **Corporations § 5.1; Bills of Discovery § 6— refusal to permit examination of corporate records—penalty**

　　In an action for malfeasance in managing a corporation, a statutory penalty assessed against defendants for refusing to allow plaintiffs to see the books and records of the corporation was properly assessed where the trial court's findings of fact were supported by the evidence. N.C.G.S. § 55-38(d).

6. **Corporations § 18— stock issued to officer—dissolution of shares—defendants' stock canceled**

　　The trial court properly canceled defendant's shares in a corporation where there was no evidence that the board of directors enacted a resolution determining the value of labor and services defendant allegedly supplied to the

Stone v. Martin

corporation as consideration for the stock, the jury rejected defendant's testimony that he had rendered labor and services to the corporation, and the jury found that defendant had not paid cash for the stock. N.C.G.S. § 55-53, N.C.G.S. § 55-46.

**7. Appeal and Error § 31.1— issue of joint and several liability not submitted—no objection at trial—no appeal**

Plaintiffs lost their right to contend on appeal that the trial court erred by not holding defendants jointly and severally liable where the jury determined the separate and individual liability of defendants for compensatory and punitive damages, the issue of joint and several liability could have been submitted to the jury but was not, and the issues submitted were submitted without objection.

APPEALS by defendants (R. L. Martin, Jr. and Larry G. Sanderford) and plaintiffs from *Preston, Judge.* Order and Judgment entered 11 February 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 10 March 1987.

Plaintiffs, shareholders in defendant corporation, brought this action for compensatory damages, punitive damages, arrest and bail, and body execution of the individual defendants for their alleged malfeasance in conducting the affairs of the corporation. The corporation's sole business was the operation of a nightclub called "Players." Plaintiffs served interrogatories and requests for admission on the individual defendants, who refused to answer, claiming the privilege against self-incrimination.

Defendants continued to assert their claim of privilege after Judge Preston ordered them to comply with most of the discovery requests. Judge Lee consequently imposed sanctions pursuant to N.C.G.S. § 1A-1, Rule 37(b), striking the individual defendants' answers, ordering them not to oppose the claims in the complaint, adjudging them to be in default and ordering a trial to determine the amount of the judgment to be entered. Defendant Martin appealed from the order imposing sanctions.

This Court affirmed that order in a decision reported at 53 N.C. App. 600, 281 S.E. 2d 402 (1981). Upon petition for rehearing, that opinion was withdrawn and superseded by an opinion reported at 56 N.C. App. 473, 289 S.E. 2d 898, *disc. rev. denied,* 306 N.C. 392, 294 S.E. 2d 220 (1982). The latter opinion affirmed Judge Lee's order on the ground that the information which was the subject of the discovery order would not necessarily tend to subject defendants to punitive damages and body execution and thus

did not fall within the constitutional privilege against self-incrimination.

The individual defendants then moved that the trial court set aside the order of default and allow them to comply with the discovery order. Judge Farmer granted their motions, and this Court in an opinion reported at 69 N.C. App. 650, 318 S.E. 2d 108 (1984), affirmed that order. Defendants Martin and Sanderford then responded to the discovery requests.

The case was tried before a jury, and the trial court entered the following order and judgment:

THIS CAUSE coming on to be heard before the undersigned Judge Presiding at the January 6th, 1986 term of Wake County Civil Superior Court, Wake County, North Carolina, before the Honorable Judge Edwin S. Preston and a jury presiding and the issues having been submitted to the jury and answered by them as follows:

(1) How much cash did R. L. Martin, Jr. pay for any stock issued to him by Creekside Enterprises, Inc.?

ANSWER: None.

(2) How much cash did Larry Sanderford pay for any stock issued to him by Creekside Enterprises, Inc.?

ANSWER: $3,000.00.

(3) How much cash did Ada Stone pay for any stock issued to her by Creekside Enterprises, Inc.?

ANSWER: $3,000.00.

(4) How much cash did Glenn [sic] Jernigan pay for any stock issued to him by Creekside Enterprises, Inc.?

ANSWER: $3,000.00.

(5) What amount of money belonging to Creekside Enterprises, Inc., if any, did R. L. Martin, Jr. wrongfully convert to his own use?

ANSWER: $11,000.00.

(6) What amount of money belonging to Creekside Enterprises, Inc., if any, did Larry Sanderford wrongfully convert to his own use?

ANSWER: $19,000.00.

(7) What amount of money, if any, should R. L. Martin, Jr. pay to Creekside Enterprises, Inc. for punitive damages?

ANSWER: $150,000.00.

(8) What amount of money, if any, should Larry Sanderford pay to Creekside Enterprises, Inc. for punitive damages?

ANSWER: $150,000.00.

IT FURTHER APPEARING UNTO THE COURT that this Court has accepted and approved of the jury's answers as their jury verdict and has directed the Clerk to enter the jury verdict on its records.

BASED UPON THE EVIDENCE PRESENTED TO THE COURT, the Court makes the following additional:

FINDINGS OF FACT

1. That Creekside Enterprises, Inc. is a corporation. The sole directors of this corporation from the time of its incorporation until the date of trial were R. L. Martin, Jr., Larry G. Sanderford and Benjamin Franklin Carraway.

2. That throughout the existence of the corporation, R. L. Martin, Jr. served as Secretary-Treasurer of the corporation and Larry G. Sanderford served as President.

3. That although Benjamin Franklin Carraway is a Director of the corporation, as stated above, he was never advised of any meetings of the Board of Directors and never voted on any matters, if any, which came before the Board of Directors.

4. There was never a meeting of the Board of Directors to evaluate and establish the value of any services rendered to the corporation by the defendants, R. L. Martin, Jr. or Larry G. Sanderford.

5. That the plaintiff, Cecil Glynn Jernigan, made demand upon the defendants, R. L. Martin, Jr. and Larry G. Sanderford, for inspection of the financial statements of the corporation and the defendants, Martin and Sanderford, refused to allow Cecil Glynn Jernigan to see those records although Cecil Glynn Jernigan was at all times mentioned in the Complaint, a shareholder of the corporation, Creekside Enterprises, Inc. and held more than 5% of the outstanding stock of the corporation. That the plaintiff, Ada Pearl Stone, on several occasions went to the premises of the nightclub known as "Players" and made demand upon the bookkeeper and the manager of that club to see the books and records of the corporation. She was told by the manager that she could not see those books and records without the approval of R. L. Martin, Jr. The plaintiff, Ada Pearl Stone, was never allowed to see the books and records of the corporation and they were not made available to her as a result of her demand upon management to see those records. Ada Pearl Stone is, and was at all times mentioned in the Complaint, a shareholder in the corporation and held more than 5% of the outstanding stocks of the corporation.

6. That the corporate defendant, Creekside Enterprises, Inc., is in imminent danger of insolvency by reason of the mismanagement of its corporate officers, the defendants, Martin and Sanderford.

7. That the fact that the defendant, R. L. Martin, Jr., issued to himself stock in the defendant, Creekside Enterprises, Inc., without paying any consideration for that stock resulted in a dilution of the shares of the other stockholders who did pay cash for their stock.

8. That the action of the plaintiffs in this cause and their lawyer have provided a substantial benefit to the corporation.

9. That a receivership is necessary for the full protection of all corporate interests and, the defendants Martin and Sanderford have, through their lawyers, stipulated that a receiver may be appointed for the corporate defendant.

10. That the jury has found by its verdict as mentioned above, that R. L. Martin, Jr. paid nothing for the stock issued

to him. Therefore, the shares issued to R. L. Martin, Jr. should be cancelled and the only stockholders of the defendant corporation are therefore the plaintiffs, Ada Pearl Stone and Cecil Glynn Jernigan, and the defendant Larry G. Sanderford, who each contributed $3,000.00 for their stock. Larry G. Sanderford, as the jury verdict holds, paid $3,000.00 for his stock.

WHEREFORE, having made the foregoing findings of fact, and the jury having answered the issues submitted to it as set out above, the Court makes the following:

### CONCLUSIONS OF LAW

(1) That the defendant corporation, Creekside Enterprises, Inc., is entitled to recover compensatory damages from the defendant R. L. Martin, Jr., in the amount of $11,000.00 with interest from May 7, 1979, until paid and the corporation is entitled to recover punitive damages from the defendant, R. L. Martin, Jr., in the amount of $150,000.00.

(2) That the corporate defendant, Creekside Enterprises, Inc., is entitled to recover compensatory damages against the defendant, Larry G. Sanderford, in the amount of $19,000.00 with interest from May 7, 1979, and is entitled to recover punitive damages against the defendant, Larry G. Sanderford, in the amount of $150,000.00.

(3) That the corporate defendant is in imminent danger of insolvency by reason of mismanagement of the individual defendants and it is necessary for the full protection of all corporate interests that a receiver be appointed to take charge of the assets of the corporate defendant.

(4) That the stock of the corporate defendant, Creekside Enterprises, Inc., held by the defendant R. L. Martin, Jr., should be cancelled.

(5) That the plaintiffs, Stone and Jernigan, are entitled to be reimbursed by the corporate defendant for their expenses of litigation, including counsel fees.

(6) That the corporate defendant, Creekside Enterprises, Inc., is entitled to recover from the defendants, Martin and

Sanderford, in addition to the sum set out above, all expenses of litigation including attorney's fees.

(7) That the plaintiffs, Stone and Jernigan, are entitled to recover from the defendants, Martin and Sanderford, a penalty of $500.00 each in accordance with the provisions of N.C.G.S. Section 55-38(d) for failure to provide the information described therein.

WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. That the defendant corporation, Creekside Enterprises, Inc., shall have and recover compensatory damages from the Defendant, R. L. Martin, Jr., in the amount of $11,000.00 with interest from May 7, 1979, until paid and the corporation shall have and recover punitive damages from the defendant, R. L. Martin, Jr., in the amount of $150,000.00 with interest from January 9, 1986.

2. That the corporate defendant, Creekside Enterprises, Inc., shall have and recover compensatory damages against the defendant, Larry G. Sanderford, in the amount of $19,000.00 with interest from May 7, 1979, and Creekside Enterprises, Inc. shall have and recover punitive damages from the defendant, Larry G. Sanderford, in the amount of $150,000.00 with interest from January 9, 1986.

3. That the plaintiff, Ada Pearl Stone, have and recover of the defendant, R. L. Martin, Jr., $500.00.

4. That the plaintiff, Ada Pearl Stone, have and recover of the defendant, Larry G. Sanderford, $500.00.

5. That the plaintiff, Cecil Glynn Jernigan, have and recover of the defendant, R. L. Martin, Jr., $500.00.

6. That the plaintiff, Cecil Glynn Jernigan, have and recover of the defendant, Larry G. Sanderford, $500.00.

7. That all stock in the corporate defendant, Creekside Enterprises, Inc., which is held by the defendant, R. L. Martin, Jr., is hereby cancelled and is therefore null and void and the Court hereby declares that R. L. Martin, Jr., owns no stock or interest whatsoever in the corporate defendant, Creekside Enterprises, Inc.

8. That a receiver shall be appointed for the corporate defendant, Creekside Enterprises, Inc., under the provisions of Part 2, Article 38 of the North Carolina General Statutes. The Court, by a separate order will appoint a receiver to take charge of the assets of the corporate defendant.

9. That the plaintiffs shall be reimbursed by the corporate defendant, Creekside Enterprises, Inc., for the reasonable expenses of bringing this litigation including counsel fees. The Court will set the amount of such expenses at a subsequent hearing.

10. That the defendants, Martin and Sanderford, are liable, jointly and severally, for the expenses of this litigation incurred by the plaintiffs on behalf of the corporate defendant, Creekside Enterprises, Inc. The Court shall set the amount of such expenses and attorney's fees at a subsequent hearing.

From the order and judgment of the trial court, defendants (Martin and Sanderford) and plaintiffs appeal.

*Brenton D. Adams, attorney for plaintiffs.*

*Hunter, Wharton & Howell, by John V. Hunter III, attorney for defendant R. L. Martin, Jr. and George R. Barrett, attorney for defendant Larry G. Sanderford.*

ORR, Judge.

I.

[1] Defendants first contend that the trial court violated their privilege against self-incrimination when it compelled them to answer discovery requests and when it admitted the answers to the discovery requests into evidence at trial.

This Court previously held that the order compelling the discovery in this case did not violate defendants' constitutional right against self-incrimination. *Stone v. Martin*, 56 N.C. App. 473, 289 S.E. 2d 898, *disc. rev. denied*, 306 N.C. 392, 294 S.E. 2d 220 (1982). Our decision in the previous appeal constitutes the law of the case. *See Transportation, Inc. v. Strick Corp.*, 286 N.C. 235, 210 S.E. 2d 181 (1974). Therefore, defendants' contention is without merit.

**[2]** Defendants next contend that the trial court erred in denying their motions for a directed verdict because the evidence was insufficient to raise an issue of punitive damages. We do not agree.

N.C.G.S. § 55-35 states:

Officers and directors shall be deemed to stand in a fiduciary relation to the corporation and to *its* shareholders and shall discharge the duties of their respective positions in good faith, and with that diligence and care which ordinarily prudent men would exercise under similar circumstances in like positions.

The jury found that Martin and Sanderford wrongfully converted to their own use money belonging to the corporation. The conversions constituted a breach of the fiduciary duty that defendants, as officers and directors of Creekside Enterprises, Inc., owed to the corporation and its shareholders.

Fraud exists when there is a breach of a fiduciary duty. *See Miller v. Bank*, 234 N.C. 309, 67 S.E. 2d 362 (1951). Punitive damages are available for fraud. *See Newton v. Insurance Co.*, 291 N.C. 105, 229 S.E. 2d 297 (1976).

Defendants argue that North Carolina law requires proof of malice or other aggravating factor in addition to the breach constituting fraud before punitive damages may be awarded. In *Oestreicher v. Stores*, 290 N.C. 118, 225 S.E. 2d 797 (1976), our Supreme Court stated, " 'Punitive damages are never awarded, except in cases when there is an element either of fraud, malice, . . . or other causes of aggravation in the act or omission causing the injury.' " 290 N.C. at 136, 225 S.E. 2d at 808 (citations omitted).

Punitive damages are available for fraud. Defendants committed fraud by breaching their fiduciary duty. Since fraud is present in the case *sub judice*, additional elements of aggravation are unnecessary. *See Newton v. Insurance Co.*, 291 N.C. 105, 229 S.E. 2d 297. We find that the conversions which constituted the breach support an award of punitive damages in this case. Therefore, we hold that the trial court properly denied defendants' motions for a directed verdict since the evidence sufficiently raised an issue of punitive damages.

[3]  Defendants also contend that the trial court erred in admitting evidence of Martin's net worth when there was insufficient evidence to raise an issue of punitive damages. Defendants concede that evidence of a defendant's net worth is relevant and admissible in punitive damages cases. Having determined that the evidence in this case sufficiently raised an issue of punitive damages, we hold that the trial court did not err in admitting evidence of Martin's net worth.

[4]  Defendants next contend that the jury's award of punitive damages "exceeded permissible bounds and should have been reduced or a new trial should have been awarded." We disagree.

It is for the jury to determine (1) whether punitive damages in any amount should be awarded, and if so (2) the amount of the award. *Hinson v. Dawson*, 244 N.C. 23, 92 S.E. 2d 393 (1956). These questions are determinable by the jury in its discretion. *Id.*

We are aware that the award of punitive damages significantly exceeds the award of compensatory damages in the present case. However, because defendants were fiduciaries and in view of the fact that the purpose of punitive damages is to punish, we find no evidence of an abuse of discretion by the jury.

[5]  Defendants further contend that "it was error to assess a statutory penalty against the defendants for allegedly refusing to allow the plaintiffs to see the books and records of the corporation, where the evidence on this score showed no such refusal." We disagree.

In its findings of fact, the trial court found that defendants refused to allow plaintiffs to see the books and records of the corporation. After reviewing the record, we hold that the trial court's findings of fact are supported by the evidence. Therefore, the trial court properly assessed the statutory penalty.

[6]  Defendants finally contend that "the trial court's cancellation of the shares of the stock of the defendant Martin was not justified by the evidence and was legally erroneous." We do not agree.

N.C.G.S. § 55-46 sets out the consideration required for the issuance of shares in a North Carolina corporation. It states in part that shares may be issued for "[m]oney or property, tangible or intangible," or "[l]abor or services actually rendered."

Martin argues that his testimony, that he made various payments which inured to the benefit of the corporation and that he rendered labor and services to the corporation, is sufficient evidence of consideration. The jury rejected Martin's testimony and found that he did not pay any cash for the stock.

Martin is correct in pointing out that labor and services may constitute sufficient consideration for the issuance of stock. However, N.C.G.S. § 55-46(f) requires that before stock is issued in consideration for labor and services, "the board of directors shall state by resolution their determination of the fair value to the corporation of such consideration." There was no evidence that such a resolution was ever enacted by the Board of Directors.

The trial court rejected Martin's testimony and specifically found as fact that Martin paid no consideration for the stock and caused a dilution of the shares of the other shareholders. N.C.G.S. § 55-53 provides cancellation as a remedy for the dilution of shares. Therefore, the trial court properly cancelled defendant Martin's shares.

## II.

[7]   In their sole assignment of error, plaintiffs contend that the trial court erred "in failing to hold the defendants Martin and Sanderford jointly and severally liable for the combined verdicts of compensatory and punitive damages against both of them when the evidence showed that the defendants Martin and Sanderford were the controlling parties of the corporation and that they acted in concert with respect to the wrongs perpetrated upon the plaintiffs." We disagree.

In the case *sub judice*, the jury determined the separate and individual liability of Martin and Sanderford for compensatory and punitive damages. Although the issue of joint and several liability could have been submitted to the jury, it was not. The issues were submitted without objection, and plaintiffs have lost their right to object to them on appeal. *Wesley v. Lea*, 252 N.C. 540, 114 S.E. 2d 350 (1960). Therefore, we hold that the trial court did not err in failing to hold Martin and Sanderford jointly and severally liable.

No error.

Judges MARTIN and GREENE concur.