THE JAY GROUP, LTD. AND B. KLITZNER & SON, INC. v. BRAXTON GLASGOW, III; MICHAEL A. ALMOND; AND PARKER, POE, ADAMS & BERNSTEIN

No. COA99-208

(Filed 15 August 2000)

## Fraud— sale of corporation—knowledge of invalid trademark

The trial court did not err by granting a directed verdict for defendants on claims for fraud, conspiracy, constructive fraud, negligent misrepresentation, legal malpractice, and breach of fiduciary duty arising from the sale of a corporation where plaintiff agreed to the acquisition to obtain certain trademarks, those trademarks were the subject of controversy with another company, and registration of the trademarks was subsequently refused. Plaintiffs' evidence showed that two officers of plaintiff Jay Group and its subsidiary were informed that the trademarks conflicted with those of another company and that their registra-

tion had been rejected. Knowledge of the president or agent of a corporation is imputed to the corporation, even if the information may not have been passed along to the CEO and Chairman of the Board, and plaintiffs' knowledge of the problems with the trademarks is fatal to their claims.

Appeal by plaintiffs from order entered 17 September 1998 by Judge Howard E. Manning, Jr., in Nash County Superior Court. Heard in the Court of Appeals 17 November 1999.

*Hartzell & Whiteman, L.L.P., by Andrew O. Whiteman and J. Jerome Hartzell, for plaintiff-appellants.*

*Smith Helms Mulliss & Moore, L.L.P., by Stephen P. Millikin, Alan W. Duncan, and Shannon R. Joseph for defendant-appellee Braxton Glasgow, III.*

*Bell, Davis & Pitt, P.A., by William K. Davis and Stephen M. Russell for defendant-appellees Michael A. Almond and Parker, Poe, Adams & Bernstein.*

MARTIN, Judge.

Plaintiffs, The Jay Group, Ltd., and its wholly owned subsidiary, B. Klitzner & Son, Inc., formerly D. Jay Fashions, Inc., (hereinafter collectively referred to as "Jay Group") brought this action against defendants Braxton Glasgow ("Glasgow"), Michael Almond ("Almond"), and Parker, Poe, Adams & Bernstein ("Parker Poe") for actions allegedly committed in connection with Jay Group's purchase of a North Carolina corporation, Shoefactory, Inc. ("Shoefactory"), from its German parent corporation, Shoefactory Vertriebs GmbH. In summary, plaintiffs alleged that defendants had intentionally and negligently failed to disclose material facts to plaintiffs, had stated other material facts known to them to be false, had conspired to defraud plaintiffs, and had breached their fiduciary duties to plaintiffs. In addition, plaintiffs alleged that Almond and Parker Poe had committed "fraudulent practices" within the meaning of G.S. § 84-13 in connection with their representation of plaintiffs during the transaction, and had committed legal malpractice as attorneys for plaintiffs. Defendants filed answers in which they denied the material allegations of plaintiffs' complaint and asserted affirmative defenses.

The trial court, *ex mero motu*, ordered that the issues of liability and damages be bifurcated into separate trials before the

same jury. Plaintiffs' evidence at trial, in the light most favorable to plaintiffs, tended to show that prior to August 1994, defendant Glasgow was president and director of Shoefactory, Inc., and owned approximately 20% of the stock in Shoefactory Vertriebs GmbH. In 1993, Glasgow had employed Parker Poe and Almond to represent Shoefactory in connection with Shoefactory's attempts to register the trademark "Blue Heart" and, subsequently, to register a new trademark, "BH Studio." These trademarks were the subject of a controversy with another shoe company, and the Patent and Trademark Office subsequently refused Shoefactory's applications to register the trademarks.

David Jay, the owner, C.E.O., and Chairman of the Board of Jay Group, had become acquainted with Glasgow through Jay's earlier efforts to sell some of his ownership interest in Jay Group. Jay and Glasgow discussed the possibility of Glasgow becoming employed by Jay Group, and Glasgow conditioned the employment upon Jay Group's purchase of Shoefactory, which was insolvent. Glasgow told Jay that Jay Group could thereby obtain the use of the "Blue Heart" and "BH Studio" brands to revitalize Jay Group's new shoe business. Jay was aware of the financial condition of Shoefactory, but agreed to its acquisition in order to obtain the trademarks. Glasgow began work for the Jay Group on 1 August 1994; his first assignments were to work with Jay Group's new shoe business and to complete Jay Group's acquisition of Shoefactory.

According to plaintiffs' evidence, Almond, who was an attorney with Parker Poe and a friend of Glasgow's, represented Glasgow in connection with his employment by the Jay Group. At Glasgow's urging, plaintiffs hired Almond and Parker Poe to handle the Shoefactory acquisition. Parker Poe drafted the stock purchase agreement for plaintiffs' acquisition of Shoefactory. At Glasgow's instruction, the agreement contained no warranties or representations concerning the transaction. The agreement contained the following provision:

> 5.b Company owns the following applications for trademark registration on the Principal Register of the U.S. Patent and Trademark Office: BH STUDIO (no serial number assigned; filed July 15, 1994), BLUE HEART s/n:74/293127 and BLUE HEART and design s/n:74/293126

The agreement also prohibited Jay Group from conveying the trademarks until the purchase price was paid in full.

On 17 August 1994, the date the transaction was supposed to close, David Jay contacted Michael Colo, an attorney in Rocky Mount, North Carolina, who had represented Jay Group over a period of years, and requested that he look over the documents prepared by Parker Poe. Colo reviewed the documents, noticed there were no covenants of title regarding the trademarks, and called Almond the following day to inquire. Almond told him the parties had agreed there would be no representations or warranties. Colo advised David Jay of his conversation with Almond and advised him that to enter such an agreement without warranties was a "business risk." David Jay told Colo that he had been told by Glasgow that Shoefactory owned the trademarks; Colo responded that if Jay trusted Glasgow and Almond he should not worry about the lack of warranties.

On 17 August 1994, Forrest Norman, president and a director of Jay Group, and Robert Elliott, controller of Jay Group and an officer and director of its subsidiary, D. Jay Fashions, Inc., went to the Shoefactory offices in Richmond to conduct a "due diligence" review of the Shoefactory financial records in connection with the purchase. While they were there, Norman and Elliott learned that Shoefactory's applications for registration of the Blue Heart trademarks had been denied. However, David Jay denied that Norman or Elliott gave him this information before Jay Group's acquisition of Shoefactory was completed on 31 August 1994. He testified that he first became aware of problems with the trademarks when he tried to license them to a third party in August 1995. He testified that he would not have proceeded with the acquisition of Shoefactory had he been advised of the problem with the trademarks.

At the close of plaintiffs' evidence, the trial court granted all defendants' motions for directed verdict. Plaintiffs appeal.

---

The single issue presented by the assignment of error brought forward in plaintiffs' brief is whether the trial court properly granted directed verdicts in favor of defendants at the conclusion of plaintiffs' evidence. A motion for a directed verdict tests the legal sufficiency of the evidence to take the case to the jury. *West v. King's Dept. Store, Inc.*, 321 N.C. 698, 365 S.E.2d 621 (1988). In ruling upon the motion, the evidence is viewed in the light most favorable to the nonmoving party, who is to be given the benefit of every reasonable inference which may be drawn from it. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1977). Appellate review of an order

granting a directed verdict is limited to the grounds asserted by the moving party at the trial level. *Crane v. Caldwell,* 113 N.C. App. 362, 438 S.E.2d 449 (1994).

Plaintiffs asserted claims against Almond and Parker Poe alleging fraud, conspiracy to defraud, breach of fiduciary duty (constructive fraud), negligent misrepresentation and legal malpractice, based upon their failure to inform plaintiffs that the trademarks were not and could not be registered. Plaintiffs also asserted claims for fraud, conspiracy to defraud, and negligent misrepresentation against Glasgow and, additionally, alleged that Glasgow, by not disclosing the information about the trademarks, is liable for breach of his fiduciary duty as an officer and director of Jay Group. Plaintiffs argue that the order granting directed verdicts for all defendants was improper because sufficient evidence was presented to the trial court to support each of these claims. We disagree and affirm the trial court's order granting defendants' motions for directed verdict.

Each of plaintiffs' claims is based upon their contention that defendants either affirmatively concealed or negligently failed to disclose that the trademarks had not been registered and could not be registered due to a conflict with the mark of another company. Defendants' motions for directed verdict were based upon, *inter alia,* evidence presented by plaintiffs which showed that they had knowledge of the problems with the trademarks in advance of the Shoefactory acquisition.

To establish fraud, a plaintiff must show "(1) that defendant made a false representation or concealment of a material fact; (2) that the representation or concealment was reasonably calculated to deceive him; (3) that defendant intended to deceive him; (4) that plaintiff was deceived; and (5) that plaintiff suffered damage *resulting from defendant's misrepresentation or concealment." Claggett v. Wake Forest University,* 126 N.C. App. 602, 610, 486 S.E.2d 443, 447 (1997) (emphasis supplied). A claim for conspiracy to defraud cannot succeed without a successful underlying claim for fraud. *See Burton v. Dixon,* 259 N.C. 473, 476, 131 S.E.2d 27, 30 (1963) ("A civil action for conspiracy is an action for damages resulting from acts committed by one or more of the conspirators pursuant to the formed conspiracy, . . . ."). "The elements of a constructive fraud claim are proof of circumstances '(1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of

his position of trust *to the hurt of plaintiff.*' " *Estate of Smith By and Through Smith v. Underwood,* 127 N.C. App. 1, 10, 487 S.E.2d 807, 813, *disc. review denied,* 347 N.C. 398, 494 S.E.2d 410 (1997) (citations omitted) (emphasis supplied). Unlike actual fraud, constructive fraud does not require evidence of intent to deceive. *Jordan v. Crew,* 125 N.C. App. 712, 482 S.E.2d 735, *disc. review denied,* 346 N.C. 279, 487 S.E.2d 548 (1997). However, in order for defendants to take advantage of plaintiffs, plaintiffs must be deceived. *See id.*

With respect to a claim for legal malpractice arising out of concealment of, or a failure to disclose, information, "an attorney who makes fraudulent misstatements of fact or law to his client, or who fails to impart to his client information as to matters of fact and the legal consequences of those facts, is liable for *any resulting damages* which his client sustains." *Fox v. Wilson,* 85 N.C. App. 292, 299, 354 S.E.2d 737, 742 (1987) (quoting 7 Am.Jur.2d, Attorneys At Law § 215, at 258 (1980)) (emphasis supplied). Similarly, "[t]he tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Hudson-Cole Development Corp. v. Beemer,* 132 N.C. App. 341, 346, 511 S.E.2d 309, 313 (1999).

With respect to the breach of duty claims alleged by plaintiff against Almond and Parker Poe, both the breach of fiduciary duty claim and the breach of duty of loyalty claim are encompassed within a claim for constructive fraud. *See generally Miller v. First Nat'l Bank of Catawba County,* 234 N.C. 309, 316, 67 S.E.2d 362, 367 (1951) (explaining that constructive fraud rests upon the presumption of fraud arising from a breach of fiduciary obligation "which . . . the law declares fraudulent because of its tendency to deceive, to violate confidence, . . . ."); *State ex rel. Long v. Petree Stockton, L.L.P.,* 129 N.C. App. 432, 447, 499 S.E.2d 790, 799 (1998) (skeptically discussing claim which plaintiff "denominated 'Breach of Duty of Loyalty' "); *Estate of Smith v. Underwood,* 127 N.C. App. 1, 487 S.E.2d 807 (1997); *Stone v. Martin,* 85 N.C. App. 410, 418, 355 S.E.2d 255, 259, *disc. review denied,* 320 N.C. 638, 360 S.E.2d 105 (1987) ("Fraud exists when there is a breach of a fiduciary duty."); 15 N.C. Index 4th, Fiduciaries § 6 (1992). Similarly, plaintiffs' claim against Glasgow for breach of his fiduciary duty essentially amounts to a claim for constructive fraud. *See Stone, supra;* 15 N.C. Index 4th, Fiduciaries § 6 (1992) (likening breach of fiduciary duty to constructive fraud); *Hudson-Cole, supra.* As plaintiffs acknowledge in their brief, each of

these claims requires proof of an injury proximately caused by the breach of duty.

Each of the foregoing claims asserted by plaintiffs requires that plaintiff establish the element of proximate causation. Even if we assume for the purposes of our decision that plaintiffs have offered sufficient evidence of every other element necessary to take this case to the jury, plaintiffs' knowledge, in advance of the Shoefactory acquisition, of the problems existing with respect to the trademarks is fatal to their claims.

Plaintiffs' evidence showed that prior to the completion of the Shoefactory acquisition on 31 August 1994, Forrest Norman and Robert Elliott, both of whom were corporate officers of Jay Group and its subsidiary, D. Jay Fashions, Inc., were informed on 17 August 1994 by a Shoefactory vice-president that the trademarks, which were very similar to and thus conflicted with the marks of another company, were not federally registered and that applications for their registration had been rejected. Knowledge of the president or agent of a corporation is imputed to the corporation itself. *See Whitten v. Bob King's AMC/Jeep, Inc.*, 292 N.C. 84, 231 S.E.2d 891 (1977); *Jenkins v. Renfrow*, 151 N.C. 323, 66 S.E. 212 (1909). This is true even though Norman and Elliott may not have passed the information along to David Jay. *See Norburn v. Mackie*, 262 N.C. 16, 136 S.E.2d 279 (1964) (principal is chargeable with knowledge received by agent while acting within scope of his authority although agent does not in fact inform principal); *Passmore v. Woodard*, 37 N.C. App. 535, 246 S.E.2d 795 (1978); 18B Am.Jur. 2d, Corporations § 1671 (1985). The corporate entities, not David Jay, are Norman's and Elliott's principals and plaintiffs in this case. *See Board of Transportation v. Martin*, 296 N.C. 20, 28-29, 249 S.E.2d 390, 396 (1978) ("A corporation is an entity distinct from the shareholders which own it. . . . Where persons have deliberately adopted the corporate form to secure its advantages, they will not be allowed to disregard the existence of the corporate entity when it is to their benefit to do so."); 18 Am. Jur. 2d, Corporations § 43, at 841 (1985) ("a corporation is a legal entity existing separate and apart from the persons composing it"). Even when it is considered in the light most favorable to the plaintiffs, this evidence will not allow a reasonable inference that plaintiffs were deceived by, or reasonably relied upon, the alleged misrepresentations by defendants. *See Watts v. Cumberland County Hospital*, 317 N.C. 110, 117, 343 S.E.2d 879, 884 (1986) (plaintiff could not be deceived as to a material fact of which it was already aware).

DUTCH v. HARLEYSVILLE MUT. INS. CO.

[139 N.C. App. 602 (2000)]

Therefore, any damages sustained by plaintiffs due to the problems with the Shoefactory trademarks did not proximately result from any acts or omissions of defendants and their motions for directed verdict were properly granted.

Plaintiffs have not briefed the propriety of the directed verdicts with respect to their claims against all defendants for securities fraud brought pursuant to G.S. §§ 78A-8 and 78A-56, or their claim against defendant Glasgow for negligent misrepresentation, thus the claims are deemed abandoned. N.C.R. App. P. 28(a), 28(b)(5). For the same reason, plaintiffs' additional assignment of error, relating to the exclusion of expert testimony, is also deemed abandoned.

The trial court's order granting defendants' motions for directed verdict is affirmed.

Affirmed.

Judges LEWIS and WYNN concur.