LARRY EDMOND STAMM, Plaintiff v. TRACEY SALOMON, LISA SALOMON, SALOMON OF IREDELL COUNTY, INC., Defendants

No. COA00-839

(Filed 17 July 2001)

## 1. Judges— ex parte contact by trial judge with bankruptcy judge—due process

In an action arising from representations allegedly made in forming a business, the trial court did not deprive defendants of their due process rights by contacting a bankruptcy judge ex parte where defendants announced their bankruptcy filing in open court and requested a stay; the trial judge contacted the bankruptcy judge to ask whether the proceedings must be stayed; the bankruptcy judge indicated that he planned to lift the stay and allow the trial to proceed and then reinstate the stay at the conclusion of the trial to prevent execution of any judgment; the

**STAMM v. SALOMON**

[144 N.C. App. 672 (2001)]

bankruptcy court issued an order to that effect which also included an opportunity for defendants to be heard; and the trial court complied with the order and allowed the jury trial to be completed. Even if the trial court erred in communicating with the bankruptcy judge ex parte, there was no prejudice.

## 2. Fraud— false representation—sufficiency of evidence

The trial court did not err in an action arising from the formation of a business by denying defendant Lisa Salomon's motions for a directed verdict and j.n.o.v. on the issue of fraud where defendant contended that plaintiff failed to establish a false representation, but there was evidence that defendant did not disclose the true ownership of land during several weeks of conversations with plaintiff about the business and construction of a building for the business. A plaintiff may prove fraud by alleging facts which establish a concealment of a material fact; there is a duty to disclose all material facts where a relationship of trust and confidence exists between the parties.

## 3. Attorneys— discharged—authority to act for client

Attorneys were without authority to make a motion for a directed verdict in an action arising from representations allegedly made during the formation of a business where defendants Tracey and Lisa Salomon were represented by the same attorneys, defendants filed for bankruptcy during the trial and defendant Tracey Salomon discharged his counsel, Tracey's former attorneys continued to represent Lisa Salomon, and defense counsel moved for a directed verdict and judgment notwithstanding the verdict on Tracey's behalf. Nothing in the record suggests that Tracey gave his former attorneys permission to further represent him following their dismissal; an attorney or law firm may not represent a client without the client's permission.

## 4. Fraud— detrimental reliance—sufficiency of evidence

The trial court did not err by refusing to direct a verdict for defendant Tracey Salomon on its own motion on a fraud claim arising from the formation of a business where defendant raised the issue of detrimental reliance, but plaintiff testified that he relied on defendants' assertions regarding ownership of the land on which a building was being built and expended significant sums on preparing the business.

**5. Appeal and Error; Corporations— argument not supported by authority—imputed knowledge from corporate president**

The trial court did not err by denying a corporation's motions for summary judgment, directed verdict, and j.n.o.v. in an action arising from the formation of another business where the argument was not supported by authority and did not have merit. The knowledge of a corporation's president is imputed to the corporation itself.

**6. Damages and Remedies— punitive damages—underlying fraud claim established**

The trial court did not err by awarding punitive damages where the court had correctly refused to dismiss plaintiff's claims for fraud.

**7. Costs— attorney fees—no authority for award specified**

The trial court erred by awarding attorney fees to plaintiff in a fraud action without specifying the statutory authority under which it made the award.

Appeal by defendants from judgment entered 26 January 2000 by Judge Mark Klass in Iredell County Superior Court. Heard in the Court of Appeals 21 May 2001.

*Homesley, Jones, Gaines, Homesley & Dudley, by Clifton W. Homesley and Kevin C. Donaldson, for plaintiff-appellee.*

*Robert K. Trobich, for defendants-appellants.*

TYSON, Judge.

Tracey Salomon ("Tracey"), Lisa Salomon ("Lisa"), and their wholly owned corporation, Salomon of Iredell ("the corporation") (collectively "defendants") appeal the entry of judgment for Larry Edmond Stamm ("plaintiff") upon a jury verdict in favor of plaintiff.

## Facts

The evidence presented at trial tended to establish that in the late summer of 1998, plaintiff and Tracey began discussing the possibility of starting a business together. The parties discussed opening a business specializing in race car painting and "blasting." Plaintiff testified that Tracey and Lisa represented to plaintiff that Tracey owned land near Mooresville, North Carolina in close proximity to many race teams that would provide business to the new company.

STAMM v. SALOMON

[144 N.C. App. 672 (2001)]

The parties agreed that Tracey would provide the land for the business, that plaintiff would provide capital for construction of the building on the property, and that Tracey and plaintiff would be equal partners in the business. Plaintiff testified that Tracey said "I've got the land, you've got the money, we'll be 50/50. 50/50 on the business, 50/50 on the building and 50/50 on the property." Plaintiff testified that he "trusted that this was truly [Tracey's] land." In furtherance of their agreement, plaintiff and Tracey filed articles of incorporation for LK Norm S&S, Inc., d/b/a Race City USA Paint and Blast.

Plaintiff testified that in reliance on Tracey's statements regarding the land and the business, he "moved forward" with a "tremendous amount of work" to procure the necessary building permits and begin construction on a building for their business. Construction on the building began in September 1998. Plaintiff testified that he "immediately" began putting money behind the business, including paying for all necessary permits, paying an architectural firm, procuring insurance, and paying several deposits for building services such as grading and plumbing. Plaintiff introduced into evidence an itemized list of his expenditures for the building, totaling approximately $44,400.00. Plaintiff further testified that he spent hours performing strenuous manual labor in the actual construction of the building. He stated that he "worked every day, seven days a week, at least 15 hours a day" on getting the building and the business ready for operation.

Plaintiff testified that as construction on the building progressed and he continued to invest money, Lisa "became every more [sic] present in our conversations and Tracey . . . eventually became nonexistent." He testified that Lisa "became increasingly visible and increasingly involved in the process." Plaintiff further testified that throughout the time that he was investing in construction of the building, Tracey and Lisa represented to him that the land on which they were building was owned by Tracey. He stated that "[t]hey told me I'd be 50/50 on the land when it was supposed to be Tracey's land" and that they represented this "for quite some time."

In September 1998, Lisa told plaintiff that the land was in fact owned by the corporation, Salomon of Iredell, and not by her or Tracey. Plaintiff testified that at the time he discovered Tracey did not own the land, he "had already spent in excess of $31,000.00." Plaintiff testified that Tracey "didn't have a whole lot to say about it," but stated "you've got to ask [Lisa]." Plaintiff spoke to Lisa, stating,

"something's got to be put in place . . . showing that I'm 50 percent owner on this property." Lisa responded that they would see an attorney to help them with the appropriate procedure. Plaintiff stated that he "in good faith . . . believed that [Tracey and Lisa] were going to hold up to their end of the bargain." Lisa also discussed with plaintiff the possibility of him entering into a lease with the corporation with an option to buy. Plaintiff believed that Lisa had authority to act on behalf of the corporation because she had told him she was its president. Plaintiff testified, "they continued to lead me down the path and said you will have an interest in this property."

Plaintiff moved forward with the business in reliance on the assurances of Lisa that his ownership interest in the business would be protected. The business began operating on 15 November 1995. Plaintiff testified that on 16 November 1995, he was discussing bills with Lisa when she stated that Tracey had "relinquished all rights to this business" to her, and that she was the one that was going to make the decisions. Plaintiff testified that the following day, Lisa "charged towards [him]" while he was at work and began yelling "I run this business."

On 18 November 1995, the two exchanged words again, and Lisa "spit directly in [plaintiff's] face." Plaintiff testified that Lisa yelled "I ought to . . . kill you. I ought to turn you upside down and bash your head into the ground." Plaintiff returned to work the following day and "pretended that nothing had really happened." Plaintiff stated that shortly thereafter, a locksmith arrived at the building and began to change the locks to the business. Plaintiff telephoned his wife who advised him to leave, since Lisa "had already threatened to kill [him]."

Plaintiff attempted to gather some personal belongings from the business, including his computer monitor. Plaintiff testified that Lisa "grabbed the monitor off of the desk and put it on her lap," stating "if you take this monitor, if you take this computer, I'll get you." Plaintiff left the business. Plaintiff never returned to the premises because he "was told [he] would be killed."

Plaintiff incurred additional expenses following his removal from the business. Defendants refused to pay all of the contractors who had performed work on the building. Plaintiff paid approximately $4,100.00, subsequent to his removal from the building and the business.

STAMM v. SALOMON

[144 N.C. App. 672 (2001)]

On 28 January 1999, plaintiff filed a complaint against defendants for actual damages, fraud and misrepresentation, unfair and deceptive trade practices, and assault and battery by Lisa. Defendants answered on 29 March 1999, asserting counterclaims for breach of contract, fraud and misrepresentation, unfair and deceptive trade practices, and assault and battery by plaintiff upon Lisa. Defendant corporation filed a motion for summary judgment on 7 October 1999, which motion was denied. Defendants filed a motion for a continuance on 30 December 1999 and again on 12 January 2000, both of which were denied.

The matter was tried to a jury at the 17 January 2000 civil session of Iredell County Superior Court. Defendants moved for a directed verdict. The trial court granted defendants' motion on plaintiff's claim for unfair and deceptive trade practices.

On 21 January 2000, during trial, Tracey discharged his attorneys. On 24 January 2000, at approximately 10:30 p.m., defendants corporately and individually filed a Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court for the Western District of North Carolina. Tracey failed to appear in court for trial on 25 and 26 January 2000.

The jury returned a verdict in favor of plaintiff on 26 January 2000. The jury awarded plaintiff $56,909.12 for all three defendants' fraud, $125,000.00 in punitive damages, and $5,000.00 for an assault and battery perpetrated by Lisa. Defendants moved for judgment notwithstanding the verdict or a new trial. The motions were denied, and the trial court entered judgment on the jury's verdict, in addition to awarding plaintiff $24,900.00 in attorney's fees. Defendants appeal.

---

Defendants argue that the trial court erred in the following: (1) contacting the United States Bankruptcy Court following defendants' filing of Chapter 7 Bankruptcy during the pendency of the trial; (2) denying defendants' motions for directed verdict and judgment notwithstanding the verdict on plaintiff's claim for fraud; (3) denying the corporations' motion for summary judgment and motions for directed verdict and judgment notwithstanding the verdict; (4) awarding punitive damages where the evidence failed to establish a cause of action for fraud; and (5) awarding attorney's fees. We hold that the trial court did not err with respect to issues (1) through (4). We reverse the trial court's award of attorney's fees.

## I. Contact with Bankruptcy Court

**[1]** Defendants argue that the trial court deprived defendants of their due process rights by engaging in *"sua sponte* and *ex parte* contact"* with the United States Bankruptcy Court judge following defendants' filing for bankruptcy. Defendants contend that the contact between the trial judge and the bankruptcy judge "evidenced bias and a lack of neutrality" by the trial court, requiring a new trial. We disagree.

The record reflects that towards the end of the trial, defendants' attorney announced in open court that defendants had filed for Chapter 7 bankruptcy at 10:29 p.m. on 24 January 2000 in the United States Bankruptcy Court for the Western District of North Carolina. Defendants requested that the trial court stay the proceedings based upon the filing of bankruptcy.

Following defendants' request, the trial court contacted the bankruptcy court to inquire whether the proceedings must be stayed. The bankruptcy judge expressed to the trial judge that he planned to lift the stay and allow the trial to proceed, but that the stay would remain in effect at the conclusion of the trial and would prevent execution on any judgment rendered against defendants. The bankruptcy court issued an order to that effect on 25 January 2000. The order also scheduled a hearing for 8 February 2000 to allow defendants to be heard on the issuance of the order.

The propriety of the order issued by the bankruptcy court is not for our review, though we note that the lifting of an automatic stay is within the authority of that court. *See* 11 U.S.C. § 362. The bankruptcy court issued an order lifting the automatic stay such that the trial, which was nearing a close, could be completed. The trial court complied with the order of the bankruptcy court and allowed the trial to proceed. Even if the trial court erred in communicating with the bankruptcy judge *ex parte*, defendants have failed to show how they were prejudiced by such communication.

Although defendants intimate that the bankruptcy judge was improperly swayed by the trial judge in issuing the order lifting the stay, the issuance of the order is not for our consideration. Defendants have failed to show any prejudice that would require the granting of a new trial.

## II. Fraud

Tracey and Lisa argue that the trial court erred in denying their motions for directed verdict and judgment notwithstanding the verdict on plaintiff's claim of fraud. Lisa alleges that plaintiff failed to forecast sufficient evidence that she made a false representation to plaintiff. Tracey argues that plaintiff failed to forecast sufficient evidence to show that plaintiff relied to his detriment on Tracey's misrepresentations about ownership of the land. We address the arguments of each defendant in turn.

Our standard of review on a motion for directed verdict and judgment notwithstanding the verdict is whether, "upon examination of all the evidence in the light most favorable to the nonmoving party, and that party being given the benefit of every reasonable inference drawn therefrom, the evidence is sufficient to be submitted to the jury." *Fulk v. Piedmont Music Center*, 138 N.C. App. 425, 429, 531 S.E.2d 476, 479 (2000) (citing *Abels v. Renfro Corp.*, 335 N.C. 209, 214-15, 436 S.E.2d 822, 825 (1993)). "If there is more than a scintilla of evidence supporting each element of the plaintiff's case, the directed verdict motion should be denied." *Little v. Matthewson*, 114 N.C. App. 562, 565, 442 S.E.2d 567, 569 (1994), *affirmed*, 340 N.C. 102, 455 S.E.2d 160 (1995) (citing *Snead v. Holloman*, 101 N.C. App. 462, 400 S.E.2d 91 (1991)).

"To establish fraud, a plaintiff must show '(1) that defendant made a false representation or concealment of a material fact; (2) that the representation or concealment was reasonably calculated to deceive him; (3) that defendant intended to deceive him; (4) that plaintiff was deceived; and (5) that plaintiff suffered damage resulting from defendant's misrepresentation or concealment.' " *Jay Group, Ltd. v. Glasgow*, 139 N.C. App. 595, 599, 534 S.E.2d 233, 236, *disc. review denied*, 353 N.C. 265, 546 S.E.2d 100 (2000) (quoting *Claggett v. Wake Forest University*, 126 N.C. App. 602, 610, 486 S.E.2d 443, 447 (1997)).

### A. Fraud Claim against Lisa

[2] Lisa argues that plaintiff failed to establish the necessary element of a false representation to warrant issuance of the fraud claim to the jury. Plaintiff concedes that he does not allege that Lisa made the initial misrepresentation regarding ownership of the land. However, plaintiff contends that there was sufficient evidence to establish fraud against Lisa based on her continued failure to disclose the true

ownership of the property throughout the parties' business dealings, and her continued assertions that plaintiff's interest in the land and business would be protected following plaintiff's discovery that neither she nor Tracey owned the property. We agree with plaintiff.

Although Lisa argues that plaintiff failed to show evidence of a false representation, we note that a plaintiff may prove fraud by alleging facts which establish a false representation *or* concealment of a material fact. *See, e.g., Watts v. Cumberland County Hosp. System, Inc.,* 317 N.C. 110, 116-17, 343 S.E.2d 879, 884 (1986) (citations omitted); *Vail v. Vail,* 233 N.C. 109, 113, 63 S.E.2d 202, 205 (1951) (quoting 37 C.J.S., Fraud, s 1, p. 204) ("in general terms fraud may be said to embrace 'all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another, or the taking of undue or unconscientious advantage of another.' "). "Where a relation of trust and confidence exists between the parties, 'there is a duty to disclose all material facts, and failure to do so constitutes fraud.' " *Vail* at 114, 63 S.E.2d at 205-06 (quoting 37 C.J.S., Fraud, s 16, p. 247).

A fiduciary relationship exits " 'in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.' " *HAJMM Co. v. House of Raeford Farms, Inc.,* 328 N.C. 578, 588, 403 S.E.2d 483, 489 (1991) (quoting *Stone v. McClam,* 42 N.C. App. 393, 401, 257 S.E.2d 78, 83, *disc. rev. denied,* 298 N.C. 572, 261 S.E.2d 128 (1979)). Generally, the existence of such a relationship is determined by specific facts and circumstances, and is thus a question of fact for the jury. *Tin Originals, Inc. v. Colonial Tin Works, Inc.,* 98 N.C. App. 663, 665, 391 S.E.2d 831, 832 (1990) (citation omitted). Business partners, however, "are each others' fiduciaries as a matter of law." *HAJMM Co.* at 588, 403 S.E.2d at 489 (citing *Casey v. Grantham,* 239 N.C. 121, 79 S.E.2d 735 (1954)).

Plaintiff's complaint alleges fraud based on false representations and defendants' "fail[ure] to disclose" that they did not own the land. The trial court in this case correctly instructed the jury that in order to find Lisa guilty of fraud, the jury must find that she made a false representation *or* that she concealed a material fact. The trial court instructed the jury that a concealment occurs "when a person fails to disclose that which under the circumstances he should disclose. A person has a duty to disclose all facts material to a transaction or

event where he is a fiduciary, he has made a partial or incomplete representation, [or] he is specifically questioned about them."

We hold that plaintiff presented sufficient evidence to overcome Lisa's motion for directed verdict on the fraud claim. Plaintiff testified that "they [Lisa and Tracey] told me I'd be 50/50 on the land when it was supposed to be Tracey's land" and that they represented this "for quite some time," including during the period when plaintiff was expending significant sums of money for construction of the building. Plaintiff testified that as construction progressed, Tracey became "nonexistent" and Lisa was "increasingly visible and increasingly involved in the process." However, it was not until plaintiff "had already invested almost $32,000.00" of his own money and weeks of his own labor towards construction of the building that defendants disclosed that they did not own the land. Thus, during that several weeks that plaintiff and Lisa were conversing regularly about the business and construction on the building, Lisa failed to disclose to plaintiff the true ownership of the land.

Viewing this evidence in the light most favorable to plaintiff, we hold that the trial court did not err in allowing the jury to consider plaintiff's claim and in denying Lisa's motion for judgment notwithstanding the verdict.

### B. Fraud Claim against Tracey

[3] Tracey argues that plaintiff failed to forecast sufficient evidence of his detrimental reliance on Tracey's misrepresentation about his ownership of the property to warrant submission of the fraud claim to the jury. Tracey argues that plaintiff was aware that the corporation owned the land prior to plaintiff's expending significant sums of money on construction of the building.

We first note that Tracey's motion for directed verdict was not properly made. On 21 January 2000, Tracey dismissed his attorneys. Defense counsel stated for the record,

that we are completely relieved of our obligations to represent [Tracey] in this case, given that he has fired us as his counsel . . . . [a]nd that the court has acknowledged that, and that we, due to his discharge of our services, no longer have any responsibility to represent him throughout the lawsuit.

The trial court noted for the record that Tracey "has fired his attorneys." Tracey was not present in court on 25 and 26 January 2000,

because he felt "he was denied his constitutional right to repre-
sentation" and therefore "construed [the trial] as a mistrial." Tracey's
former defense counsel, who still represented Lisa, moved for
directed verdict and judgment notwithstanding the verdict on his
behalf.

An attorney or a law firm may not represent a client without the
client's permission to do so. *Dunkley v. Shoemate*, 350 N.C. 573, 578,
515 S.E.2d 442, 445 (1999). " '[N]o person has the right to appear as
another's attorney without the authority to do so, granted by the
party for which he [or she] is appearing.' " *Id.* at 577, 515 S.E.2d at 444
(quoting *Johnson v. Amethyst Corp.*, 120 N.C. App. 529, 532, 463
S.E.2d 397, 400 (1995), *disc. rev. allowed*, 342 N.C. 655, 467 S.E.2d
713, *disc. rev. withdrawn*, 343 N.C. 122, 471 S.E.2d 65 (1996)).
Nothing in the record suggests that Tracey gave his former attorneys
permission to further represent him following their dismissal on 21
January 2000; thus, his former counsel was without authority to make
motions on his behalf.

[4] We have also held, however, that the trial court has authority to
direct a verdict on its own motion. *See L. Harvey and Son Co. v.
Jarman*, 76 N.C. App. 191, 199, 333 S.E.2d 47, 52 (1985) (where party
fails to move for directed verdict, trial court has authority to direct
verdict of own initiative; "[h]owever, mindful of the low evidentiary
threshold necessary to take a case to the jury, and also of the detailed
procedure outlined in Rule 50, which presumes the use of a motion
before a verdict is directed, we do not encourage the frequent use of
this practice, and caution trial judges to use it sparingly.").

We hold that the trial court did not err in failing to do so here.
Plaintiff testified that "for quite some time," and throughout the time
that he was investing in construction of the building, Tracey and Lisa
continued to represent that the land on which they were building was
owned by Tracey. Plaintiff testified that he "had already spent in
excess of $31,000.00" at the time he discovered Tracey did not own
the land. Moreover, plaintiff testified that after he discovered Tracey
did not own the land, defendants continued to misrepresent that they
would "work something out" regarding ownership of the land.
Plaintiff testified that he continued to rely on defendants' assertions
and expend significant sums of money on preparing the business.

Such evidence, viewed in the light most favorable to plaintiff, is
sufficient evidence of detrimental reliance to allow the jury to con-
sider plaintiff's fraud claim against Tracey. Nor did the trial court err

STAMM v. SALOMON

[144 N.C. App. 672 (2001)]

in failing to grant the motions for judgment notwithstanding the verdict. These assignments of error are overruled.

### III. Claims against the Corporation

**[5]** Defendants argue that the trial court erred in denying the corporation's motion for summary judgment and motions for directed verdict and judgment notwithstanding the verdict. Defendants argue that plaintiff failed to bring forth any cause of action against the corporation.

Defendants' argument is not supported by any authority, *cf.* N.C. R. App. P. 28(b)(5) (assignments of error for which no authority is cited will be taken as abandoned), nor do we find that it has merit. The knowledge of a corporation's president, in this case Lisa, or its agent, is imputed to the corporation itself. *Jay Group, Ltd., supra,* 139 N.C. App. at 601, 534 S.E.2d at 237 (citations omitted). We reject this argument.

### IV. Punitive Damages

**[6]** Defendants argue that the trial court erred in denying defendants' motions for judgment notwithstanding the verdict and new trial and in awarding punitive damages where the evidence failed to establish a cause of action for fraud. In light of our holding that the trial court did not err with respect to plaintiff's fraud claims, we find no error in the entry of an award for punitive damages thereon. *See* N.C. Gen. Stat. § 1D-15 (1999) (allowing imposition of punitive damages where defendant is liable in compensatory damages for fraud); *Mehovic v. Mehovic,* 133 N.C. App. 131, 136, 514 S.E.2d 730, 733 (1999) (citing *Newton v. Standard Fire Ins. Co.,* 291 N.C. 105, 112, 229 S.E.2d 297, 301 (1976)) ("fraud is, itself, one of the elements of aggravation which will permit punitive damages to be awarded.").

### V. Attorney's Fees

**[7]** Defendants also argue that the trial court erred in awarding plaintiff $24,900.00 in attorney's fees. "As a general rule, attorneys fees are not awarded to the prevailing party without statutory authority." *Brown v. Rhyne Floral Supply Mfg. Co., Inc.,* 89 N.C. App. 717, 717, 366 S.E.2d 894, 895, *cert. denied,* 322 N.C. 834, 371 S.E.2d 275 (1988), *cert. denied,* 488 U.S. 1045, 102 L. Ed. 2d 997 (1989) (citing *Trust Co. v. Schneider,* 235 N.C. 446, 70 S.E.2d 578 (1952)). The trial court in this case did not specify the statutory authority under which it awarded attorney's fees to plaintiff.

LASHLEE v. WHITE CONSOL. INDUS., INC.

[144 N.C. App. 684 (2001)]

Our thorough review of defendants' remaining arguments that the trial court erred in failing to grant judgment notwithstanding the verdict or a new trial reveals no error. We find no error in the award of compensatory and punitive damages in favor of plaintiff. The entry of the award of attorney's fees in the amount of $24,900.00 for plaintiff is reversed.

No error in part; reversed in part.

Chief Judge EAGLES and Judge McGEE concur.